## State of Vermont v. Raymond A. Jewett

[500 A.2d 233]

No. 83-478

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed August 9, 1985

*John R. Churchill*, Chittenden County Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Gregory W. McNaughton*, Barre, for Defendant-Appellant.

**Hayes, J.** In this case, we are asked to decide, among other issues, whether the defendant was illegally stopped and arrested in violation of his rights guaranteed by Chapter I, Article 11 of the Vermont Constitution. The state constitutional issue has been squarely raised, but neither party has presented any substantive analysis or argument on this issue. This constitutes inadequate briefing, and we decline to address the state constitutional question on the basis of the record now before this Court. *State* v. *Taylor*, 145 Vt. 437, 439, 491 A.2d 1034, 1035 (1985). Because the briefs fall short of the mark on the state constitutional claim, we are directing the parties to file supplemental briefs addressing that issue.

The standard we have set is clear: what is adamantly asserted must be plausibly maintained. Yet our duty is not met by simply drawing the line. On the subject of briefing, we have said many times what we are *against!* Now the hour has come to say what we are *for*. To put it in another way, we who have the mind to criticize must have the heart to help.

This occasion makes clear the need to raise the plane of consciousness of bench and bar about the resurgence of federalism that is sweeping across the country. Since 1970 there have been over 250 cases in which state appellate courts have viewed the scope of rights under state constitutions as broader than those secured by the federal constitution as interpreted by the United States Supreme Court.[1]

---

[1] Collins, *Reliance on State Constitutions: Some Random Thoughts*, in *Developments in State Constitutional Law* 2 (B. McGraw ed. 1985).

Oregon Justice Hans Linde has stated: "A lawyer today representing someone who claims some constitutional protection and who does not argue that the state constitution provides that protection is skating on the edge of malpractice."[2]

Recently a young lawyer wrote of attorney neglect regarding the possibilities of state constitutional law:

> It is the highest law of our state, yet it is sometimes esteemed the lowest. It is routinely cited, then routinely forgotten. It is our birthright, which we have sold for a bowl of federal porridge. It is our state Constitution, the poor relation of the United States Constitution. But it may soon be coming into new wealth.[3]

One longs to hear once again of legal concepts, their meaning and their origin. All too often legal argument consists of a litany of federal buzz words memorized like baseball cards. As Justice Linde has noted:

> People do not claim rights against self-incrimination, they "take the fifth" and expect "*Miranda* warnings." Unlawful searches are equated with fourth amendment violations. Journalists do not invoke freedom of the press, they demand their first amendment rights. All claims of unequal treatment are phrased as denials of equal protection of the laws.[4]

Why has all of this happened? Former Justice Charles G. Douglas of the New Hampshire Supreme Court gives this explanation:

> The fact that law clerks working for state judges have only been taught or are familiar with *federal* cases brings a federal bias to the various states as they fan out after graduation from "federally" oriented law schools. The lack of treatises [or] textbooks developing the rich diversity of state constitutional law developments could be viewed as an at-

---

[2] Welsh & Collins, *Taking State Constitutions Seriously*, 14 The Center Mag. 6, 12 (Sept./Oct. 1981).

[3] Tinkle, *The Resurgence of State Constitutional Law*, 18 [Me.] Bar Bull. 257 (1984).

[4] Linde, *E Pluribus—Constitutional Theory and State Courts*, in *Developments in State Constitutional Law* 279 (B. McGraw ed. 1985).

tempt to "nationalize" the law and denigrate the state bench.[5]

Despite the burgeoning developments in state constitutional law, only about a dozen law schools have courses in state constitutional jurisprudence. Some commentators have noted that this oversight stems from the fact that many law school deans are former clerks to Justices of the United States Supreme Court or other members of the federal judiciary.

To paraphrase Jefferson, we might as well require a man to wear still the coat which fitted him as a boy as to educate a law student in this time of the post-Warren counter-revolution as if there had been no resurrection of federalism and state judicial independence. It is small wonder that lawyers are confused or baffled when they decide to engage in independent interpretation of the Vermont Constitution.

This generation of Vermont lawyers has an unparalleled opportunity to aid in the formulation of a state constitutional jurisprudence that will protect the rights and liberties of our people, however the philosophy of the United States Supreme Court may ebb and flow. In his correspondence with George Wythe, John Adams summed up this kind of historic time: "You and I, dear friend, have been sent into life at a time when the greatest lawgivers of antiquity would have wished to live."[6]

About the struggle for equality in France and across Europe, the poet Wordsworth wrote:

Bliss was it in that dawn to be alive,
But to be young was very heaven.

The development of state constitutional jurisprudence will call for the exercise of great judicial responsibility as well as diligence from the trial bar. It would be a serious mistake for this Court to use its state constitution chiefly to evade the impact of the decisions of the United States Supreme Court. Our decisions must be principled, not result-oriented. Justice Pollock of the New Jersey Supreme Court expressed his concern this way: "[s]tate courts should not look to their constitutions only when they wish to reach a result different from the United States Supreme Court.

---

[5] Douglas, *State Judicial Activism—The New Role for State Bills of Rights*, 12 Suffolk U.L. Rev. 1123, 1147 (1978).

[6] J. Adams, *Thoughts on Government IV*, 200 (1850).

That practice runs the risk of criticism as being more pragmatic than principled."[7]

█ The path of caution, however, is not the path of timidity. When a state constitutional issue is squarely raised on appeal, and it appears the issue has possible merit, if the briefing is inadequate, we will order a rebriefing or address the issue. Otherwise it will seem that we are "decided only to be undecided, resolved to be irresolute, adamant for drift, . . . all-powerful for impotence."[8]

An attorney defeated in the trial court is said to have two inalienable rights: (1) He may go down to the inn . . . , or to his club in town, and cuss the court and/or jury; and (2) He can take an appeal.[9]

We have taken no survey on the former but are in a position to know the latter inalienable right is certainly being exercised. Thus, it is important that the attorney consider the various approaches that can be taken to state constitutional argument. We will outline some of them in the paragraphs that follow. The advocate in appellate argument may wish to combine several of these approaches, having in mind that any collegial tribunal contains members with varying legal backgrounds and philosophies. What is appealing to one justice may be unpersuasive to another. Therefore, wise counsel will use every tool available in his or her efforts to convince.

One approach to constitutional argument involves the use of fundamentally historical materials. Mr. Justice Holmes has said that "historic continuity with the past is not a duty it is only a necessity. . . ."[10]

In *Gompers v. United States*, 233 U.S. 604 (1914), Holmes was speaking of the United States Constitution, but his remarks would be equally applicable to the Vermont Constitution. He said:

> the provisions of the Constitution are not mathematical formulas having their essence in their form; they are organic living institutions transplanted from English soil. Their sig-

[7] Pollock, *State Constitutions as Separate Sources of Fundamental Rights*, 35 Rutgers L. Rev. 707, 717 (1983).

[8] W. Churchill, *While England Slept* (1938).

[9] F. Wiener, *Briefing and Arguing Federal Appeals*, 5 (1961).

[10] Holmes, *Learning and Science* in *Collected Legal Papers* 139 (1920).

nificance is vital not formal; it is to be gathered not simply by taking the words and a dictionary, but by considering their origin and the line of their growth.

*Id.* at 610.

Historical argument may also touch upon the legislative history of a particular provision, "or on the social and political setting in which it originated, or on the fate of the [provision] in subsequent constitutions."[11]

The textual approach to state constitutional argument needs little explanation. A state constitutional clause may confer rights not bestowed by the United States Constitution or contain language that differs from parallel provisions in the National Charter so that the former invites interpretation on independent grounds. Justice Joseph Story draws this distinction between historical and textual arguments:

> "Mr. Jefferson has laid down [what he deems a perfect canon] for the interpretation of the Constitution. . . . On every question of construction [we should] carry ourselves back to the time, when the Constitution was adopted, recollect the spirit manifested in the debates and instead of trying what meaning may be squeezed out of the text, or invented against it, conform to the probable one, in which it was passed . . . .
>
> "Now who does not see the utter . . . incoherence of this canon. . . . Is the sense of the Constitution to be ascertained . . . by conjecture from scattered documents, from private papers, from the table talk of some statesmen . . . ? It is obvious, that there can be no security to the people in any constitution of government if they are not to judge of it by the fair meaning of the words of the text."[12]

Both the self-incrimination and search and seizure provisions of the Vermont Constitution contain wording substantially different from the parallel clauses in the Federal Charter. Thus, it is possible that these clauses could be construed differently from somewhat similar provisions in the Federal Constitution or they may

---

[11] Linde, *supra*, note 4, at 285.

[12] P. Bobbitt, *Constitutional Fate—Theory of the Constitution* 25 (1982) (quoting J. Story, 1 *Commentaries on the Constitution of the United States* § 407, at 390 n.1 (1st ed. 1833)).

be given the same interpretation even though the language differs.

The advocate may also use a sibling state approach in state constitutional argument. This involves seeing what other states with identical or similar constitutional clauses have done. Mr. Justice Charles Douglas points out that in *Heath* v. *Sears, Roebuck & Co.*, 123 N.H. 512, 526, 464 A.2d 288, 296 (1983), the legal remedy clause of the New Hampshire Constitution was examined in terms of the analysis by several other state courts of identically worded provisions.[13] He went on to note that the Rhode Island Supreme Court adopted *Heath* when considering the same language in the Rhode Island Constitution. See *Kennedy* v. *Cumberland Engineering Co.*, ___ R.I. ___, ___, 471 A.2d 195, 200-01 (1984).

Another approach involves the use of economic and sociological materials in constitutional litigation. The classic example of this was in *Muller* v. *Oregon*, 208 U.S. 412 (1908), which upheld a state law limiting the hours of labor for women. Then attorney Louis D. Brandeis filed a brief in which he assembled a list of similar state and foreign statutes, "extracts from over ninety reports of committees, bureaus of statistics, commissioners of hygiene, inspectors of factories, both in this country and in Europe, to the effect that long hours of labor are dangerous for women," and "extracts from similar reports discussing the general benefits of short hours from an economic aspect of the question," all supporting the contention that the statute at issue bore a reasonable relationship to the public health and safety, concededly legitimate exercises of the police power. *Id.* at 419-20 n.1.

Philip Bobbitt discusses six types of constitutional argument in his very excellent volume.[14] These types are the historical, the textual, the doctrinal, the prudential, the structural, and the ethical. A study of this volume would be of great help to the advocate who approaches for the first time the task of briefing a state constitutional question.

We have not meant to suggest here that all of the types of constitutional argument have been mentioned in this opinion or in

---

[13] Douglas, *State v. Ball: The Need To Put Last Things Last*, IV [N.H.] Trial Bar News 13-15 (March/April, 1984).

[14] Bobbitt, *supra*, note 12.

Mr. Bobbitt's work. The imaginative lawyer is still the fountain-head of our finest jurisprudence.

No attorney briefing or arguing a state constitutional question before the Vermont Supreme Court should undertake his or her task without first reviewing *Michigan* v. *Long*, 463 U.S. 1032 (1983).

In that case the United States Supreme Court said:

> [W]hen . . . a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, *we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so.*

*Id.* at 1040-41 (emphasis supplied).

When briefing state constitutional questions, counsel should heed this warning of Mr. Justice Carson of the Oregon Supreme Court:

> [B]eware of using federal cases and saying they "compel" a given conclusion. They may, but the point here is that if they are good cases for their logic and their reasoning, then cite them, use them, but do not say they "compel" the state court to reach its decision. The United States Supreme Court will reverse whenever it finds that the state court erred in interpreting federal law. Now this is true even though the state may also have relied on its own constitution. My point here is that if you say that this result is "compelled" by the federal Constitution, and if we follow your advice, you may be setting yourself up for reversal if the Supreme Court says: "Wrong, the federal Constitution does not compel this decision and we cannot tell from the opinion whether the state court would have reached this result on independent state grounds." Again, first things first, try to get the state court to decide a question based on its law and constitution and not on the federal law; persuaded yes, compelled no.[15]

---

[15] Carson, *"Last Things Last"*: *A Methodological Approach to Legal Argument in State Courts*, (Appendix prepared by Ronald K. L. Collins), 19 Willamette L. Rev. 641, 651 (1983).

To protect his or her client, it is the duty of the advocate to raise state constitutional issues, where appropriate, at the trial level and to diligently develop and plausibly maintain them on appeal. It is the corresponding obligation of the Vermont Supreme Court, when state constitutional questions of possible merit have been raised, to address them or order that they be rebriefed when the briefs do not pass muster. If we breach this duty, "we fail to live up to our oath to defend our constitution and we help to destroy the federalism that must be so carefully safeguarded by our people." *State* v. *Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983).

During the American Constitutional Convention when the last members were signing the fundamental Charter, Benjamin Franklin looked toward the chair of General Washington at the back of which a sun had been painted. He observed

> to a few members near him, that painters had found it difficult to distinguish in their art a rising from a setting sun. "I have," said he, "often and often in the course of the session, and the vicissitudes of my hopes and fears as to its issue, looked at that behind the President without being able to tell whether it was rising or setting: But now at length I have the happiness to know that it is a rising and not a setting sun."[16]

We have an opportunity to develop a sound jurisprudence of state constitutional law that will serve not only this generation of Vermonters but those who will come after us in the decades yet to be. If we meet this challenge we too will see the dawn of a great new day such as Franklin spoke of so many years ago.

*The parties in this case are hereby directed to prepare and file supplemental briefs addressing the state constitutional issue raised in appellant's brief. Appellant's supplemental brief to be filed on or before September 16, 1985; appellee's supplemental brief to be filed on or before October 15, 1985; any supplemental reply brief by appellant shall be filed on or before October 30,*

---

[16] C. Bowen, *Miracle at Philadelphia* 263 (1966) (quoting James Madison in a letter to Thomas Jefferson).

*1985. Cause to be set for reargument on the first day of November Term, 1985.*