2006 VT 104

### Robert A. Bloomer, Jr. v. David A. Gibson, Esq.

[912 A.2d 424]

No. 04-540

Present: **Dooley, Johnson and Skoglund, JJ., and Teachout, Supr. J. and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed October 20, 2006

*Robert A. Bloomer, Jr.*, Pro Se, Addison, Plaintiff-Appellant.

*Shannon A. Bertrand* of *Kenlan, Schwiebert & Facey, P.C.,* Rutland, for Defendant-Appellee.

¶ 1. **Dooley, J.** Plaintiff, Robert A. Bloomer, Jr., brought this action against defendant, David Gibson, for malpractice in connection with his representation of plaintiff in a federal criminal case. The action was eventually tried to court on a theory of breach of contract and resulted in a verdict for defendant. On appeal, plaintiff argues that the court erred in denying him a trial by jury and in applying an "actual innocence" standard to his claims of malpractice and breach of contract. We hold that the court properly decided that plaintiff waived his right to trial by jury and that plaintiff cannot recover the damages he seeks. We affirm.

¶ 2. In 1991, plaintiff was charged in a federal criminal prosecution, and, with the help of his father, retained the services of defendant, David A. Gibson, for representation relating to those charges. Defendant engaged in substantial legal and factual investigation of the case, which eventually went to trial in April 1991. The trial lasted two weeks, and a jury eventually found plaintiff guilty on all six of the federal charges. The judge sentenced plaintiff to 121 months in federal prison. Plaintiff appealed the conviction and sentence to the United States Court of Appeals for the Second Circuit; the government appealed the sentence.

¶ 3. The court of appeals upheld the conviction, *United States v. Spencer,* 4 F.3d 115 (2d Cir. 1993), but found plaintiff's sentence had been improperly calculated and remanded for further sentencing. Plaintiff was then sentenced to 188 months in federal prison, which was later affirmed. *United States v. Bloomer,* 43 F.3d 1457 (2d Cir. 1994) (Table).

¶ 4. Three years after his conviction, plaintiff filed a post-conviction-relief petition in federal court under 28 U.S.C. § 2255, in which he argued that he had received ineffective assistance of counsel by defendant at trial in relation to an improper jury charge. The district court dismissed the complaint, but the court of appeals found the trial court's jury charge on reasonable doubt was improper and remanded the case to the district court to determine if defendant's representation was ineffective.[1] *Bloomer v. United States,* 162 F.3d 187, 195 (2d Cir. 1998).

---

[1] Plaintiff's counsel fees for his post-conviction-relief proceedings as well as his appellate fees on his direct appeal were paid pursuant to the Criminal Justice Act, 18

¶ 5. On remand, in a brief entry order decision, the district court found that defendant had rendered ineffective assistance of counsel for failing to object to the reasonable doubt instruction and, accordingly, granted plaintiff a new trial. Pursuant to the new trial option, plaintiff elected to plead guilty to one count of the original indictment and was sentenced to time served, which amounted to approximately eighty-seven months in prison.

¶ 6. Plaintiff brought this action against defendant in 1999, alleging that defendant committed malpractice in nine specified instances and acted "maliciously, grossly negligently and in utter disregard of the rights of plaintiff." He alleged that as a result of defendant's malpractice he was "severely harmed, including spending 7 years in prison." He sought both compensatory and punitive damages. About ten months later, he moved to amend the complaint to include the following new grounds for relief: intentional infliction of emotional distress, breach of contract, and failure to maintain plaintiff's client file. The court granted the motion with respect to the intentional infliction of emotional distress claim, but denied it as to the other two claims. As to the breach of contract claim, the court indicated that plaintiff had stated at the hearing on the motion that he added the claim solely to obtain the return of the fee his family paid defendant. The court stated that return of the fee was part of the damages allowed for malpractice.

¶ 7. The court granted defendant's motion for summary judgment with respect to plaintiff's malpractice claims.[2] Recognizing that this decision left plaintiff without a claim for the return of the fees paid to defendant, the court reconsidered the denial of the motion to amend to add a breach of contract claim. On May 6, 2001, plaintiff submitted an amended complaint alleging only breach of contract. The complaint stated that "[i]mplicit in the agreement [between plaintiff and defendant] was that [d]efendant would perform with a minimum level of competence and diligence" and went on to itemize ten specific duties that defendant assumed. It then stated that "[d]efendant failed to perform to the minimum standards as required by the agreement" and itemized thirteen different instances in which de-

---

U.S.C. § 3006A, so he did not incur any legal expenses for those actions. See *United States v. Bloomer*, 150 F.3d 146, 148 (2d Cir. 1998). Accordingly, plaintiff's claim here does not relate to either his appellate or post-conviction-relief claims in federal court.

[2] Plaintiff's claims for intentional infliction of emotional distress were dismissed in a separate summary judgment decision on August 9, 2001.

fendant's representation fell below minimum standards. It asked for damages without specifying an amount. The trial court denied defendant's motion for summary judgment on the breach of contract claims. The case was tried to court over five trial days in 2004 and 2005. Plaintiff appeals from the Rutland Superior Court decision of November 22, 2004, granting judgment to defendant on the breach of contract counts.

¶ 8. On appeal, plaintiff argues that the superior court erred in holding that he had waived his right to a jury trial, and in repeating that holding in response to his amended complaint, and in adopting an actual innocence rule to grant judgment to defendant on plaintiff's breach of contract claims. We address these issues.

¶ 9. It is undisputed that plaintiff had a right to trial by jury in this case. Vt. Const. ch. I, art. 12; Vt. Const. ch. II, § 38; V.R.C.P. 38(a). To invoke the right, a plaintiff must demand a jury trial pursuant to our procedural rules. See *Muzzy v. Curtis*, 127 Vt. 516, 517, 253 A.2d 149, 150 (1969) ("Proper and effective administration of the courts requires that reasonable notice be given of the intention of a party to avail himself of his right, in a civil case, to put his case before a jury."). Rule 38 of the Vermont Rules of Civil Procedure governs the right to trial by jury and provides that "[a]ny party may demand a trial by jury of any issue triable of right by a jury by (1) serving . . . a demand . . . *not later than 10 days after the service of the last pleading* . . . ." V.R.C.P. 38(b) (emphasis added). Failure to serve and file a demand as required by Rule 38(b) is a waiver of the right to trial by jury. *Id.* 38(d).

¶ 10. Plaintiff did not request a trial by jury in his 1999 complaint, nor did he indicate he desired a jury trial in response to any of defendant's answers, which were the final pleadings. See V.R.C.P. 7(a) (specifying pleadings). Plaintiff finally submitted a request for trial by jury on April 12, 2000, which the trial court rejected as waived by plaintiff for failure to timely file in accordance with V.R.C.P. 38(b). Subsequently, plaintiff included a jury demand with his amended complaint in May 2001. Upon defendant's motion, however, the trial court struck that jury demand, holding that where a jury demand has been waived it is not revived in an amended complaint that adds no new issues to a litigation, but merely offers an alternative theory for recovery.

¶ 11. Plaintiff argues on appeal that Rule 38(d) is invalid, or cannot be interpreted to apply to a situation where a plaintiff demands a

jury trial three years before trial. He further argues that his right to a jury trial was revived by the filing of the amended complaint.

¶ 12. We reject plaintiff's argument that the rule is invalid. The initial version of the Vermont Rules of Civil Procedure, including Rule 38 in substantially the same form as it exists today, was adopted in 1971 pursuant to specific authority granted by the Legislature in 12 V.S.A. § 1. See 1969, No. 119, § 1 (amending 12 V.S.A. § 1); Foreward, Vermont Rules of Civil and Appellate Procedure and District Court Civil Rules (1971) (statement of Chief Justice James S. Holden on the history of the rules). Rule 38 provides the procedure for administration of the jury trial right. As we said in *Hale v. Melendy*, 139 Vt. 28, 30, 421 A.2d 1296, 1297 (1980), the "rules are designed to preserve a litigant's constitutional right to a jury trial, Vt. Const. ch. II, § 38, while also promoting the effective administration of justice." More recently, we have noted that "Vermont courts have long exercised the power to adopt administrative rules having an incidental effect on the availability of jury trials in some cases." *In re Vermont Supreme Court Admin. Dir. No. 17*, 154 Vt. 392, 399, 579 A.2d 1036, 1040 (1990). Pursuant to that authority, we held in *Muzzy*, 127 Vt. at 517, 253 A.2d at 150, that rules consistent with the Constitution can require that "reasonable notice be given of the intention of a party to avail himself of his right, in a civil case, to put his case before a jury." We see no reason to abandon that holding here.

¶ 13. We recognize that plaintiff was required to make his jury demand far in advance of the trial in this case. The court has, however, no way of knowing when trial will be reached, and the date of trial, if a case goes that far, is determined in part by whether the case will be tried to court or to a jury. The identity of the fact-finder, whether judge or jury, will have an influence on how the case is prepared and pretrial proceedings conducted. Thus, it is reasonable for the rules to require identification of the fact-finder early in the case.

¶ 14. Plaintiff failed to request a trial by jury within the required time-frame specified in Rule 38(b) and, as a result, waived his right to a trial by jury in this case, V.R.C.P. 38(d). Although the court has discretion to allow a jury trial where a timely demand is not made, *id.* 39(b), we find no abuse of that discretion here. The only argument plaintiff made on this point was that he was pro se and unaware of the rule. The court does not abuse its discretion where it enforces the rules of civil procedure equitably, even against a pro se

litigant. See *Nevitt v. Nevitt*, 155 Vt. 391, 401, 584 A.2d 1134, 1140 (1990) (holding that although trial courts may not take unfair advantage of pro se litigants, the trial court is not responsible for offering affirmative help to those appearing pro se).

¶ 15. Plaintiff further argues that even if he did not make a timely demand for a jury trial in his original complaint, his subsequent amended complaint, in which he did demand a trial by jury, was a timely demand under the rules and, as such, the trial court should have provided him with a jury trial on the claims in the amended complaint. Plaintiff contends that because his amended complaint is a "pleading" and because Rule 38(b) allows for a jury demand within ten days of the "last pleading directed to such issue," his subsequent demand for a jury was sufficient to grant him that right.

¶ 16. The law applicable to this argument is set out in *My Sister's Place v. City of Burlington*, 139 Vt. 602, 433 A.2d 275 (1981), where we followed the decisions of the United States Court of Appeals for the Second Circuit under the identical federal rule. There, we held that "'amendments of the pleadings that do not change the issues do not revive this right.'" *Id.* at 611, 433 A.2d at 281 (internal citations omitted). We went on to explain that "when the matrix of facts pertinent to a complaint are not changed, the addition of a new legal theory for recovery is not sufficient to restore the right to a jury." *Id. My Sister's Place* is consistent with the law as it has developed under the identical federal rule. See 9 C. Wright and A. Miller, Federal Practice and Procedure § 2320, at 154 (2d ed. 1995) ("[I]f the amended . . . pleading does not raise a new issue, but merely changes the theory of the case or the relief requested, then a jury trial right waived by a failure to demand in connection with the original pleading is not revived."); Annot., *Rule 38 of Federal Rules of Civil Procedure: Waived Right to Jury Trial as Revived by Amended or Supplemental Pleadings*, 18 A.L.R. Fed. 754 et seq. (1974 & Supp. 2005).

¶ 17. Plaintiff has two arguments as to why the amended complaint raised "new issues" and gave him a renewed right to trial by jury, which he timely claimed. The first is that his amended complaint is based on a different legal theory, that is, breach of contract, rather than the malpractice tort theory alleged in the initial complaint. This is, however, exactly the kind of "addition of a new legal theory" that does not give a renewed right to trial by jury under *My Sister's Place*. The trial court held: "[A]ll of the so-called contractual duties that the plaintiff raises are also general professional duties of a

lawyer. Hence, this action is essentially a tort claim veiled as a breach of contract claim." As we discuss in more detail in the next section of this opinion, we agree with the trial court's analysis. A new theory alone does not raise a new issue if it is based on the same matrix of facts. *Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1066 (9th Cir. 2005). We reject the argument that the change of theory gave plaintiff a new opportunity to demand a jury trial.

¶ 18. The second argument is that the amended complaint raised new issues by adding specific claims of defendant's action or inaction that fell below the "minimum standards" required by the employment contract. There were five such actions added by the amended complaint — for example, that "[d]efendant failed to adequately prepare for plaintiff's suppression hearing, even failing to identify the leading case on suppression." The problem with this argument is that neither the specification of malpractice actions in the first complaint, nor the specification of instances of performance below minimum standards in the second complaint, were exhaustive. Thus, the original complaint said that "[i]n his representation of plaintiff, defendant committed malpractice *in a number of instances including*"; (emphasis supplied), and went on to describe nine instances. The amended complaint said "defendant failed to perform to the minimum standards as required by the agreement *including the following instances*": (emphasis supplied), and went on to describe thirteen instances. Reflecting the open-ended nature of plaintiff's lists, other instances, such as failure to claim double jeopardy and failure to communicate settlement offers, were added at trial.

■ ¶ 19. We believe that both the complaints addressed only one common matrix of facts — defendant's representation of plaintiff in his criminal trial and appeal, and in post-trial proceedings. In both complaints, plaintiff alleged that there were many instances of malpractice of which only some were detailed. The second complaint added more detail but not more counts. See *Advent Elecs., Inc. v. Buckman*, 918 F. Supp. 260, 264 (N.D. Ill. 1996) (finding the amended complaint merely alleges new legal theories and "'particularized facts,' rather than new factual issues, and thus cannot revive the waived right to a jury"). We cannot conclude that the amended complaint raised new issues that created a new right to trial by jury.

¶ 20. Plaintiff's next argument, and the crux of his appeal, involves his claim for breach of contract by legal representation that fell below minimum standards. He argues that the superior court erred in failing to decide that defendant's substandard representation

required that he refund the fees charged for that representation. We affirm the trial court's rejection of this argument on the ground of lack of causation, although for a different reason than the trial court.

¶ 21. To understand plaintiff's issue, we start with the two main decisions of the superior court. The first dismissed plaintiff's malpractice complaint on summary judgment on two related grounds. The court held that plaintiff must be innocent of the crime for which he was charged in order to bring a malpractice action against his criminal defense lawyer, and further held plaintiff's eventual guilty plea established that he was not innocent as a matter of law. Alternatively, the court held that plaintiff could not show that defendant's negligence was the proximate cause of plaintiff's damages, again because the guilty plea established that those damages were caused by plaintiff's criminal conduct. On this alternative point, the court added:

> Although the plaintiff in the instant case has waived any claim for damages arising from his incarceration, . . . he does seek to recover as a measure of damages on his malpractice claim the attorney's fees paid to the defendant. However, those attorney's fees were incurred as a direct result of the defendant's own criminal conduct, not as a result of the defendant's alleged inadequate representation. In other words, the defendant's alleged negligence did not cause the plaintiff to incur these fees, rather, it was his unlawful conduct in the first instance which necessitated that expenditure.

Despite this ruling, the court denied defendant's summary judgment motion on plaintiff's amended complaint alleging breach of contract, necessitating the trial on that complaint.

¶ 22. After trial on the breach of contract theory, the court issued a twenty-three page decision, finding against plaintiff on all his claims of substandard representation, except one. The court found that by failing to object to the jury instruction on reasonable doubt, and failing to raise the issue on appeal, "defendant's representation lacked due care" with respect to this issue. The court went on to hold, however, that plaintiff's contract claims were actually tort claims and applied the causation standard that it had applied in the summary

judgment decision.[3] Thus it held that plaintiff could not prevail because he was not "actually innocent of the charges" and could not establish proximate cause.

¶ 23. On appeal, plaintiff attacks primarily the use of the actual innocence rule, but also the decision on causation. His position is:

> Appellant seeks only to be made whole, i.e. to recover his fees and expenses incurred in connection with appellee Gibson's ineffective representation.... All of plaintiff's criminal convictions were reversed solely due to Mr. Gibson's ineffective assistance.... This left appellant in exactly the same position he was before Mr. Gibson had ever entered an appearance — under indictment and facing trial. Any services rendered by Mr. Gibson were thus without value to appellant.

Defendant urges us to adopt the actual innocence rule.

¶ 24. Although in *Fitzgerald v. Congleton*, 155 Vt. 283, 290, 583 A.2d 595, 600 (1990), we noted in the context of applicable statutes of limitations that "[t]he line that delineates the underlying nature of a cause of action is not always a clearly defined one, particularly in a legal malpractice action," our more recent cases have held that an action to recover for legal malpractice lies in tort, on the theory of the attorney's negligence. See *Roberts v. Chimileski*, 2003 VT 10, ¶ 15, 175 Vt. 480, 820 A.2d 995 (mem.) ("[L]egal malpractice action is at base a negligence action: plaintiff must prove that the attorney was in fact negligent and that this negligence was the proximate cause of plaintiff's injury."); *Knott v. Pratt*, 158 Vt. 334, 335, 609 A.2d 232, 233 (1992) (to recover for legal malpractice, "plaintiff must prove both that defendant was negligent and that the negligence proximately caused plaintiff's harm"). In both his original complaint, and in the amended complaint, plaintiff alleged that defendant failed to perform "in accordance with established standards of skill and care." *Hedges v. Durrance*, 2003 VT 63, ¶ 6, 175 Vt. 588, 834 A.2d 1 (mem.).

---

[3] In essence, the superior court granted summary judgment on the amended complaint, as it had on the original complaint, making unnecessary its determination that defendant's representation fell below the legal standard because of failure to object to the jury instruction. Normally, we would hold that a party's failure to challenge a summary judgment decision would prevent a challenge to a later trial judgment which is based on the exact same evidence and reasoning. In this case, however, we will treat plaintiff's challenge to the trial judgment as also applicable to the summary judgment.

Plaintiff did not allege that defendant breached any special obligations contained in his employment contract with defendant. Indeed, he could not make such an allegation because the contract was oral and contained no specific or special obligations. In these circumstances, the superior court correctly labeled plaintiff's amended complaint as containing "a tort claim veiled as a breach of contract claim." See *Chavez v. Saums*, 571 P.2d 62, 65 (Kan. Ct. App. 1977) (holding that "[w]hen an act complained of is a breach of specific terms of the contract, without any reference to the legal duties imposed by law upon the relationship created thereby, the action is in contract," but where "the gravamen of the action is a breach of the legal duty and not the contract itself, the action is in tort") (internal citations omitted); *Johnson v. Carleton*, 765 A.2d 571, 573 n.3 (Me. 2001) (directing that legal malpractice claims be analyzed under tort, not contract, where the claim does not refer to an express contract).

¶ 25. Although plaintiff raised tort claims to establish liability, he sought only the return of the fee paid to defendant, damages normally associated with breach of contract. See Restatement (Second) of Contracts § 347(a) (1981) (damages for breach of contract include "loss in the value to him of the other party's performance caused by its failure or deficiency"). In fact, his argument is that the one breach of duty found by the superior court should entitle him to the return of the entire fee paid to defendant, as if defendant performed no services at all. In effect, the remedy would be a rescission of the employment contract with complete return of plaintiff's consideration. Plaintiff justifies his right to this remedy on the fact that defendant's representation brought about no change in his legal situation, as if the contract guaranteed a favorable result.

¶ 26. By narrowing his claim for relief solely to return of the fees paid defendant, plaintiff in essence accepted the ruling of the superior court that he could show no consequential damages in view of his guilty plea and reconviction based upon that plea. In addressing the fees, however, the superior court went further holding that "defendant's alleged negligence did not cause the plaintiff to incur these fees, rather, it was his unlawful conduct in the first instance which necessitated that expenditure." In effect, the court found no causal nexus between the fees and the supposed malpractice, and further concluded that the fees were the result of plaintiff's underlying guilt and were therefore not recoverable. We agree with plaintiff that the superior court's narrower proximate cause theory based on plaintiff's reconviction does not cover his claim for return of

the fees paid to defendant. Nevertheless, we conclude that plaintiff cannot establish causation for the fees.[4]

---

[4] The dissent contends that our affirmance of the trial court on the basis of causation alone amounts to an improper "sua sponte" disposition of the case on "grounds of which neither party had notice or an opportunity for briefing or argument." Post, ¶¶ 31, 30. This contention misstates both the relation of our disposition to that of the trial court and the role of appellate review.

First, the assertion that the parties had no notice of the issue of causation defies the trial court's order. The portion of the trial court's decision from which plaintiff now appeals, titled "CAUSATION," questions in its first sentence whether "plaintiff can prove that he wrongly incurred fees as a result of the defendant's single malfeasance related to the jury charge." Additionally, while the order intermixes reference to plaintiff's guilt with causation, it concludes:

> [T]here can be no breach of contract in this case unless [there is] negligence, and there can be no negligence without proximate cause. Ergo, despite the defendant's malfeasance with respect to the jury charge, the defendant cannot be liable for breach of contract because the plaintiff cannot show that the jury charge error caused his injury.

We agree and find this conclusion dispositive, making the further discussion of plaintiff's guilt superfluous.

Second, even if we first raised the precise issue on which we affirm, our decision would represent a routine application of the doctrine that this Court "may affirm a trial court's decision if the correct result is reached, despite the fact that the court based its decision on a different or improper rationale." *Sorge v. State*, 171 Vt. 171, 174 n.*, 762 A.2d 816, 818 n.* (2000) (citing *Bissonnette v. Wylie*, 166 Vt. 364, 370, 693 A.2d 1050, 1055 (1997) ("We agree with the trial court's conclusion, but use a different rationale to reach it."), and *Hudson v. Town of East Montpelier*, 161 Vt. 168, 170, 638 A.2d 561, 563 (1993) ("[W]e need not adopt the court's rationale in affirming its conclusion.")). Hardly a term goes by in which we do not invoke this doctrine to some degree in some case to avoid unnecessary reversals of trial court decisions. See, e.g., *McAlister v. Vermont Prop. & Cas. Ins. Guar. Ass'n*, 2006 VT 85, ¶ 1, 180 Vt. 203, 908 A.2d 455 (lower court's interpretation of governing statute was erroneous, but decision affirmed based on alternative interpretation). Indeed, because of the long-standing application of this doctrine, the parties on appeal are expected to identify and address related approaches that would reach the same result as the trial court. In light of the superior court decision, we see no unfairness in expecting them to address issues of causation.

Finally, while we are sensitive to the philosophical arguments of a law review article like that cited by the dissent, we are more persuaded by the critics of such a rigid approach. See S. Cravens, *Involved Appellate Judging*, 88 Marq. L. Rev. 251, 253 n.4 (2004) ("Milani and Smith take a certain plot of high ground in their process-dominant view, which is of course defensible in many ways, but ultimately I conclude that a solution such as theirs is in the first place unrealistic, due to a lack of resources necessary to achieve it, and is furthermore a bad policy in that it permits bad lawyering to result in bad law, where that eventuality may be avoidable.").

¶ 27. The measure of damages for malpractice is "all damages proximately caused by the wrongful act or omission." 3 R. Mallen & J. Smith, Legal Malpractice § 20.4, at 13 (2006 ed.); see *State v. Therrien*, 2003 VT 44, ¶ 15, 175 Vt. 342, 830 A.2d 28 ("[M]alpractice liability cannot arise unless the lawyer's negligence is a proximate cause of the claimed harm."). The fees charged by defendant were not caused by defendant's malpractice; they were charged irrespective of the quality of defendant's representation. On this point, we distinguish between two types of attorney's fees. If plaintiff had incurred legal fees to correct the adverse consequences of defendant's malpractice, those fees might be recoverable because they were "caused by the wrongful act or omission." *Bourne v. Lajoie*, 149 Vt. 45, 53 n.3, 540 A.2d 359, 364 n.3 (1987); see *Therrien*, 2003 VT 44, ¶¶ 19-21 (finding attorney may have been liable for subsequent damages proximately caused by attorney's negligence). On the other hand, at least where defendant took some action "for which plaintiff[] received some value," plaintiff cannot recover attorney's fees paid to defendant.[5] *Ramp v. St. Paul Fire & Marine Ins. Co.*, 269 So. 2d 239, 246 (La. 1972) (cited and quoted in *Bourne*).

¶ 28. Here, plaintiff apparently incurred no legal fees in correcting defendant's error because he was provided counsel at public expense. In any event, he has made no claim for such expenses. Plaintiff received the value of weeks of defendant's pretrial investigation and trial representation; the quality of his representation fell below acceptable minimums only with respect to the jury instructions. In such circumstances, plaintiff cannot recover the fees he paid defendant in a malpractice action.

¶ 29. Because we hold that defendant's malpractice is not the cause of the fees paid to him, we do not decide whether we would adopt the actual innocence rule as an element of a lawyer malpractice action against a criminal defense lawyer.

*Affirmed.*

¶ 30. **Teachout, Supr. J.,** Specially Assigned, dissenting in part. I dissent from that portion of the decision in which the majority

---

[5] We do not exclude the possibility that there may be a bona fide fee dispute in the course of criminal representation that would give rise to a breach of contract claim that was not a disguised malpractice claim. See, e.g., *Bird, Marella, Boxer & Wolpert v. Superior Ct.*, 130 Cal. Rptr. 2d 782 (Ct. App. 2003). This is not such a case.

declines to rule on the use of the actual innocence rule and affirms the trial court judgment using a different rationale. I do not join the majority for three reasons. First, the case is decided on grounds of which neither party had notice or an opportunity for briefing or argument. Second, the legal principle on which the decision is founded is unclear. Finally, the application of the actual innocence rule is overly broad on the facts of this case. I would remand for a factual finding on whether defendant's negligence proximately caused harm to plaintiff.

## I. *Sua sponte grounds for the decision*

¶ 31. In this case, the trial court made detailed findings of fact and concluded that defendant was negligent in failing to object to a faulty jury instruction on reasonable doubt and failing to challenge the instruction on appeal. The court did not make a factual finding on whether the negligence proximately caused harm to plaintiff. Instead, the trial court applied an actual innocence rule developed in other jurisdictions to preclude plaintiff from recovering any damages for defendant's negligent acts. Both parties devoted all of their written and oral arguments in this portion of the case to the merits of applying the actual innocence rule as a matter of law. The majority affirms the trial court, but specifically declines to address the arguments on the use of the actual innocence rule, and instead decides the case on an alternative rationale raised sua sponte by the Court.

¶ 32. The appellate process normally calls for the Court to decide legal issues raised by the appellant after both sides have had adequate notice of the issues and opportunity for briefing and argument. *State v. Jewett*, 146 Vt. 221, 222-23, 500 A.2d 233, 234-35 (1985); *State v. Taylor*, 145 Vt. 437, 439, 491 A.2d 1034, 1035 (1985) ("It is only in the rare and extraordinary case that this Court will consider, sua sponte, issues not properly raised on appeal before us."); *State v. Settle*, 141 Vt. 58, 61, 442 A.2d 1314, 1315 (1982) ("We have held, and we reiterate here that, in all but a few exceptional instances, matters which are not briefed will not be considered on appeal."); see also V.R.A.P. 28(a) (appellant's brief should explain what the issues are, how they were preserved, and what appellant's contentions are on appeal, with citations to the authorities, statutes, and parts of the record relied on); V.R.A.P. 30(a) (appellant must file printed case that contains extracts from record below as are necessary to present fully the questions raised).

¶ 33. The opportunity to present arguments on the legal issue upon which a case is to be decided is fundamental to sound legal process, and it is important to public confidence in the judiciary. See generally A. Milani & M. Smith, *Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts*, 69 Tenn. L. Rev. 245, 271-79 (2002). Milani and Smith argue that sua sponte decisions by appellate courts are: (1) inconsistent with the fundamental principles of due process that parties should have notice and opportunity to be heard on the determinative issue in the case; (2) inconsistent with the American judicial system's reliance on the adversary process because they are contrary to its (a) central premise that the adversarial clash provides a court with the best arguments and analysis on an issue; (b) emphasis on neutral and passive decision makers; and (c) commitment to party presentation of evidence and arguments; and (3) an abuse of judicial discretion. *Id.* at 262-90.

¶ 34. The Court occasionally departs from the usual process and decides cases on legal grounds not raised or briefed by the parties or decided by the trial court, invoking authority to decide cases on any legal ground shown by the record. See, e.g., *In re Handy*, 171 Vt. 336, 764 A.2d 1226 (2000). In some cases, the practice has been justified because the parties were on notice of the issue and the Court heard "'reasoned arguments' from the party against whom [it] decide[d] the question." *Harris v. Town of Waltham*, 158 Vt. 477, 479 n.1, 613 A.2d 696, 697 n.1 (1992). The practice has also been justified when the parties were provided the opportunity for supplemental briefing. *Merrilees v. Treasurer*, 159 Vt. 623, 623-24, 618 A.2d 1314, 1315-16 (1992) (mem.). In other cases, the Court has simply decided an issue without benefit of notice and briefing or argument, and without explaining why it has dispensed with briefing. See, e.g., *Larkin v. City of Burlington*, 172 Vt. 566, 772 A.2d 553 (2001) (mem.); *In re Handy*, 171 Vt. at 337, 764 A.2d at 1230.

¶ 35. The fact that the Court engages in this practice does not ensure that it has considered all meritorious arguments on the issue decided. The cases cited show that our Court, like others, has not yet developed consistent standards for when briefing should be invited and when it is unnecessary. See S. Cravens, *Involved Appellate Judging*, 88 Marq. L. Rev. 251, 257-65 (2004). Cravens recognizes that "[t]here is no apparent agreement on a practical course of action" when the parties arguably "miss the point" in their briefs, and she discusses the extent to which appellate courts should recast issues sua sponte when, among other circumstances, "the court sees

a completely different framework in which to view the case." *Id.* at 262, 251. Unlike Milani and Smith, Cravens advocates an activist approach based on the premise that the purpose is to reach "the most correct resolution" of an issue.[6] *Id.* at 294. Even accepting this premise, the question is whether dispensing with briefing in a particular case will achieve this result.

¶ 36. Vigorous dissents are not uncommon when cases are decided on unbriefed grounds, and these dissents highlight the important policies underlying the practice of notice and briefing. See, e.g., *Harris*, 158 Vt. at 484, 613 A.2d at 700 (Allen, C.J., dissenting). As Chief Justice Allen explained in *Harris*, "[a] principal reason for not considering issues not presented by the parties at trial or in their briefs is the great risk of deciding important issues without hearing reasoned arguments on both sides of the question, especially a novel question." *Id.* at 485, 613 A.2d at 700; see also *Favreau v. Miller*, 156 Vt. 222, 233, 591 A.2d 68, 75 (1991) (Dooley, J., dissenting) (stating that the majority should not decide an issue where "[w]e have not had the benefit of briefing and argument on that issue").

¶ 37. In a case where the majority found a legislative act unconstitutional without a constitutional challenge having been raised, the dissent faulted the majority for deciding the case without argument on the legal basis for the decision, which it noted had been subject to scholarly criticism. *In re Handy*, 171 Vt. at 351-52, 764 A.2d at 1240 (Johnson, J., dissenting). According to the dissenting justices, the majority's decision to strike down the statute by asserting its authority to "affirm on any grounds" stretched the maxim beyond its breaking point. *Id.* at 352, 764 A.2d at 1240.

¶ 38. In this case, the majority concludes that because attorney's fees would have been charged even if there had been no negligence, defendant's negligence was not the proximate cause of the payment of attorney's fees, and therefore it cannot be the proximate cause of damages in a malpractice case seeking return of payment. This theory, which is case-dispositive, appears for the first time in the majority decision. The trial court's approach to the entire issue of causation was to apply the actual innocence rule: plaintiff's guilt alone formed the basis of the ruling on causation, and no other aspect

---

[6] Cravens calls upon judges to think carefully about what course to take when confronted with the question, and notes that her research has shown that the issue "has not yet attracted the kind of attention that it merits." *Id.* at 297.

of causation was considered.[7] The approach taken by the majority was not addressed by the trial court or by the parties in their briefs or at oral argument. The approach is not so obvious that the parties should have foreseen it as important and addressed it. Indeed, it is absent from most if not all of the many decisions from other states that have addressed the applicability of the actual innocence rule. See Part III, *infra.*

¶ 39. The parties had no reason to suspect that the Court would decide the case on any grounds other than the one on which the trial court clearly based its decision, and on which plaintiff based his appeal. Neither party has had the opportunity to consider or present argument on the analysis underlying the majority's ruling, nor challenge its conclusion, based on a 1972 Louisiana case, that plaintiff cannot recover attorney's fees paid to defendant as long as "defendant took some action 'for which plaintiff[] received some value.'" See *ante,* ¶ 27 (citing *Ramp v. St. Paul Fire & Marine Ins. Co.,* 269 So. 2d 239, 246 (La. 1972)).

¶ 40. The Court has been deprived of the benefit that comes from a full airing of the legal issues, including analysis and arguments presented by advocates, and dialogue that would be helpful in evaluating the wisdom of a proposed rule of law.[8] As the Court has previously stated, a "broad new doctrine of lawyer malpractice liability" should not be "based on a record that is wholly inadequate to make this decision." *Roberts v. Chimileski,* 2003 VT 10, ¶ 18, 175 Vt. 480, 820 A.2d 995 (mem.).

¶ 41. At the very least, I would notify the parties that the Court was considering alternative grounds on this portion of the case, provide an opportunity for supplemental briefing, and schedule the case for reargument. See *Jewett,* 146 Vt. at 223, 500 A.2d at 234-35. Even Cravens, who argues that judges should not be limited to the arguments raised in the briefs on appeal, recognizes that inviting

---

[7] Any discussion of the actual innocence rule necessarily encompasses issues of proximate causation, but not all discussions of proximate causation in negligence cases involve the actual innocence rule. Compare *ante,* ¶ 26, with discussion *infra,* ¶ 52.

[8] The issue of whether a negligent attorney may retain all or a part of fees paid is complex, as illustrated by the numerous cases from other jurisdictions discussed in *Saffer v. Willoughby,* 670 A.2d 527, 533-35 (N.J. 1996) (addressing whether lawyer facing malpractice claim should be precluded from recovering any fee that was proximately related to alleged negligence, and holding that "[o]rdinarily, an attorney may not collect attorney fees for services negligently performed.").

supplemental submissions by the parties may be warranted where "there is an omitted issue or an argument that might be dispositive or highly influential in the decision." Cravens, *Involved Appellate Judging, supra,* at 296. The majority has decided the case based on unexamined reasoning. Such an approach, without an explanation of why it is justified in this case, does not demonstrate respect for the contributions counsel and parties may be able to make, or promote confidence in the justness of the process or outcome. The proposed basis for the decision should be presented to the parties for briefing.

## II. *The legal basis of the majority's decision*

¶ 42. While I am reluctant to address the merits of the basis for the majority decision given the absence of briefing and argument by the parties, I will nonetheless set forth causes for concern about the opinion of the majority.

¶ 43. Under ordinary negligence jurisprudence, proximate causation is a fact question for the trier of fact. *Roberts,* 2003 VT 10, ¶ 15 ("[P]roximate cause in lawyer malpractice actions is 'cause-in-fact.'"). Both parties agree that the trial judge did not make a finding of fact on this issue because he applied the actual innocence rule instead. The majority concludes that plaintiff cannot establish proximate cause for these fees because the attorney's fees "were charged irrespective of the quality of defendant's representation" and therefore not proximately caused by malpractice. *Ante,* ¶ 27. It is unclear whether the majority is announcing this as a rule of law, or making its own determination of fact.

¶ 44. If it is a rule of law, it is difficult to determine what the ruling is, and what its governing principle is. Is it a rule of law that no remedy for the return of any fees paid is available in a malpractice case against a criminal defense attorney as long as the lawyer "took some action 'for which plaintiff[] received some value,'" and the client eventually pled guilty to at least one crime? If so, how is that different from the actual innocence rule?

¶ 45. Is it a rule of law that in such a case a client is precluded from recovery only if he or she is asking for return of all fees paid? While plaintiff sought to recover the full amount he paid, the prayer for relief in his amended complaint asked for judgment "in an amount commensurate with his damages." The trial judge recognized that the purpose of the trial was to determine whether "a part or all of the fees paid" were incurred as a result of inadequate representation. In any negligence case the trier of fact does not grant an all-or-nothing

recovery in response to a plaintiff's request, but is required to limit recovery to the extent of harm proved to have been caused by the negligence. It is difficult to conclude that the majority ruling means that a plaintiff will be barred if he asks for return of the full fee, but not so barred if he asks for a return of less than the full amount paid. Such a rule is not consistent with either negligence or contract law and procedure, in which a plaintiff may assert a claim for the maximum amount desired, but recovery is limited to the amount proved at trial.

¶ 46. Is it a rule of law that in any malpractice case brought against any professional a client may not sue for return of fees paid if the fees would have been charged absent negligence? If so, this is an extremely broad legal doctrine that deserves more attention. Who determines whether the fees would have been charged absent negligence? In a footnote, the majority distinguishes this case from one in which there "may be a bona fide fee dispute in the course of criminal representation that would give rise to a breach of contract claim that was not a disguised malpractice claim." *Ante,* ¶ 27 n.5. It is unclear whether the majority recognizes that there could ever be a bona fide fee dispute arising from substandard attorney work in the absence of special obligations created by contract. This is an important question, since the case moves further toward treating all attorney malpractice cases as negligence cases and not contract actions in the absence of specific contractual terms. See *ante,* ¶ 24 (plaintiff's claim was properly construed as a tort claim because plaintiff did not allege that defendant breached any special obligations in his employment contract with defendant, nor could he as their agreement was oral and contained no specific or special obligations).

¶ 47. Thus, it is difficult to discern not only what the rule is, but what the governing principle underlying that rule is, so that it may be applied in variant factual circumstances in the future. For example, imagine a plaintiff who is convicted of driving under the influence (DUI) after a trial in which his privately retained counsel performed competently prior to trial but made numerous errors at trial, or perhaps slept through it, to use plaintiff's example. The plaintiff, with different counsel, obtains a reversal on appeal. To avoid a retrial, he subsequently pleads guilty to the lesser charge of

negligent operation with the same fine amount he previously paid.[9] Can he assert a malpractice claim for that portion of the fees paid to the first trial attorney for incompetent work in the trial portion of the case? It is work that would have been charged for, whether it was competent or not. If he is barred from such a recovery by the holding in this case, how does the rule of law differ from the actual innocence rule? If he is not, what is the basis for the difference?

¶ 48. In the broadest application of the majority decision, it would insulate all professionals from malpractice suits in which clients seek a return of fees paid where there are no special contractual obligations. In its narrowest application, it appears indistinguishable from the actual innocence rule. Because of the lack of clarity, it is not helpful to either attorneys or trial judges, and carries the risk of inconsistent interpretation.

¶ 49. Alternatively, the conclusion that "plaintiff cannot establish proximate cause for these fees" may be read as a determination of fact. Determination of proximate cause requires a finding by the trier of fact except in rare circumstances. *Roberts*, 2003 VT 10, ¶¶ 14-15; *Fritzeen v. Trudell Consulting Eng'rs, Inc.*, 170 Vt. 632, 635, 751 A.2d 293, 297 (2000) (mem.) ("Proximate cause is ordinarily an issue to be resolved by the jury unless the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way.") (quotations and citations omitted). Thus, it is the fact-finder's task to find proximate cause, especially where there are various possible causal contributors to an event, such that "[t]he proof and facts . . . do not lend themselves to . . . singular clarity." *Fritzeen*, 170 Vt. at 635, 751 A.2d at 297.

¶ 50. If the Court is making a factual determination, it is not based on a review of the evidence, as the nature of the appeal did not call for a review of evidence presented at trial. The trial judge as fact-finder never made such a determination based on the trial evidence because he applied the actual innocence rule. Therefore, I would remand to the trial court for a factual finding of whether defendant's negligence was the proximate cause of any harm to plaintiff in relation to fees paid for services.

---

[9] A person may be motivated to plea to the lesser charge to eliminate the risk of significant collateral effects of a DUI conviction as well as limit expense and delay.

### III. *The actual innocence rule*

¶ 51. I turn last to the issue presented for appellate review: "Did the Superior Court err by adopting an 'actual innocence' rule?" The majority states that it chooses to leave this issue deliberately undecided. I would hold that the rule is not applicable in this case because the policy reasons underlying the rule have little weight in a fee case such as this one.

¶ 52. In general, the actual innocence rule precludes a criminal defendant from recovering money damages in a malpractice action against his trial attorney for effects of conviction, such as time spent incarcerated, unless he can establish his "actual innocence" in relation to the subject matter of the legal representation. See generally 3 R. Mallen & J. Smith, Legal Malpractice §§ 26.13-26.17, at 912-77 (2006 ed.). Some courts view "actual innocence" as an additional element required to sustain a criminal malpractice action; others view a criminal defendant's guilt as relevant to the element of proximate cause inherent in any legal malpractice proceeding. Compare *Wiley v. County of San Diego*, 966 P.2d 983, 985 (Cal. 1998) (proof of "actual innocence" is required as additional element in criminal malpractice action) with *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 498 (Tex. 1995) (criminal defendant cannot establish proximate cause in criminal malpractice action, as a matter of law, unless his conviction has been overturned because it is the illegal conduct rather than the negligence of his counsel that is the cause-in-fact of any injuries flowing from the conviction). The line between the "actual innocence" rule and proximate cause can be difficult to discern. Thus, in *Krahn v. Kinney*, 538 N.E.2d 1058, 1060-62 (Ohio 1989), the Ohio Supreme Court declined to adopt an "actual innocence" requirement for criminal malpractice actions but recognized that, in most cases, the failure to secure a reversal of the underlying criminal conviction may bear upon and even destroy a plaintiff's ability to establish proximate cause for damages.[10]

---

[10] Other courts have similarly recognized the close relationship between the actual innocence rule and an analysis of proximate cause. See, e.g., *Wiley*, 966 P.2d at 991 (Werdegar, J., concurring) (arguing that court should not add a new element to tort of malpractice because ordinary principles of tort law typically offer other paths to the conclusion that persons found guilty of crimes may not obtain damages from their defense attorneys, and explaining that "[t]he doctrine of proximate cause, for example, generally makes it difficult or impossible ... to show that any ensuing consequences can fairly be attributed to an attorney's negligent representation"); *Canaan v. Bartee*,

¶ 53. Those courts that have adopted the "actual innocence" rule generally identify compelling public policy reasons for its use, including prohibiting criminal defendants from profiting financially where their underlying conduct may have been wrongful. See, e.g., *Wiley*, 966 P.2d at 985-87 (adopting actual innocence rule and finding rule justified by public policies against allowing an individual to profit by his own fraud, or to take advantage of his own wrong, or to found a claim upon his iniquity, or to acquire property by his own crime, and stating that "allowing civil recovery for convicts impermissibly shifts responsibility for the crime away from the convict"). These policy considerations are most relevant where: (1) a criminal defendant's conviction is reversed or vacated due to the attorney's error; (2) the client subsequently pleads guilty or no contest to the same criminal charge and receives a sentence with credit for time served; and (3) the client then seeks money damages from the trial attorney for the first conviction. See, e.g., *Brown v. Theos*, 550 S.E.2d 304, 306 (S.C. 2001). In such cases, the effect of the rule is consistent with the requirements of proof of proximate causation: the defendant has little prospect of being able to prove causation between the negligence and the claimed harm of imprisonment. Either the underlying criminal conduct, or the guilty plea in which the defendant accepts responsibility for criminal conduct, is seen as the cause of incarceration, eclipsing the attorney's negligence as the proximate cause.

¶ 54. The policy reasons underlying the actual innocence rule lose their force in the context of a fee dispute. They are outweighed by competing policy considerations, such as the basic principle of professional accountability through civil liability. The facts of this case illustrate the disjunction between the purposes for the rule and its effect in fee cases. Here, the trial court found that defendant was negligent because he failed to object to a faulty jury instruction on reasonable doubt and he failed to raise the issue on direct appeal. This issue is fundamental to representation of a client at a criminal jury trial. Although defendant acted negligently, the court denied plaintiff's claim for relief because he could not establish his "actual

---

72 P.3d 911, 920-21 (Kan. 2003) (adopting exoneration requirement as additional element of criminal malpractice action but stating that adoption of the rule "could be construed simply as a recognition that a plaintiff has no cause of action until he or she can establish the causation element of his or her claim," i.e., until a plaintiff has been exonerated, his or her criminal conduct and not his or her attorney's negligence is the proximate cause of his or her incarceration).

innocence." The court cited to *Wiley*, 966 P.2d at 986, indicating its approval of the public policy reasons expressed in the decision.

¶ 55. The policy considerations cited by the trial court in support of its decision have little relevance to plaintiff's claimed harm — loss of money paid for substandard work. While it may be reasonable for a fact-finder to conclude that a plaintiff who seeks money damages for incarceration cannot establish causation unless he can show the incarceration was wrongful, the use of the actual innocence rule in this case is overbroad as plaintiff seeks only return of fees paid for negligent work and not compensation for incarceration. Cf. *Wiley*, 966 P.2d 983 (court adopted "actual innocence" rule in case where criminal defendant sued public defender for malpractice after his conviction was vacated and jury awarded him $162,500 in damages for effects of conviction; appeals court overturned award because Wiley could not establish his "actual innocence"). Plaintiff may or may not have presented sufficient evidence below to show a causal link between the negligence and an amount of unjustified attorney's fees paid. The trial court should evaluate all of the evidence, including plaintiff's guilty plea and the effect of defendant's negligence on the fees charged, to determine if cause-in-fact has been proved, rather than rely on a rule of thumb developed for different factual circumstances.

¶ 56. Applying an actual innocence rule as a matter of law on these facts deprives a client who pays value for a competent legal defense of even the opportunity to make a showing of proof of causation. See *Lynch v. Warwick*, 115 Cal. Rptr. 2d 391, 398-400 (Ct. App. 2002) (McDonald, J., dissenting) (asserting that policy concerns underlying actual innocence rule are inapplicable where plaintiff claims that he incurred attorney's fees for services that were either not performed or inadequately performed, and stating that "[a] criminal defendant's guilt should not deprive him or her of the right to recover money paid to his or her attorney for legal representation that was not provided."); see also *Bird, Marella, Boxer & Wolpert v. Superior Ct.*, 130 Cal. Rptr. 2d 782, 786-89 (Ct. App. 2003) (distinguishing *Lynch*, and holding that fee dispute between client and former counsel does not entail policy considerations that arise from malpractice suits that invoke actual innocence rule); *Saffer*, 670 A.2d at 533-35. Moreover, because the client is deemed unable to show the element of causation, the client never has the opportunity to show negligence. The result is a complete denial of any remedy for having paid a professional for negligent work.

¶ 57. This is particularly true in light of the trend in Vermont, illustrated by this case, of treating attorney malpractice cases as sounding in negligence rather than contract, absent specific contract terms.[11] See *ante*, ¶ 24. If the actual innocence rule precludes a person who has paid a privately retained attorney for competent professional services from having a negligence remedy for malpractice, and there is no ability to pursue a breach-of-contract claim, then there is no remedy available for malpractice at all in fee cases. The salutary effect of promoting professional competence through civil liability is lost.

¶ 58. The Court stated in *Roberts* that it was "not prepared to eliminate the causation requirement" from the tort of legal malpractice. 2003 VT 10, ¶ 16. The application of the actual innocence rule to the facts of this case would have an opposite but equally significant effect: it would eliminate the tort itself as applied to private criminal defense attorneys, at least as to claims for return of fees paid to that attorney. As long as their clients enter a plea of guilty to even one criminal act, however minor in relation to the original charged conduct, such attorneys are essentially immunized and their clients would not even have the opportunity to meet the burden of proof. This effect is not consistent with generally applicable principles of negligence law. As applied to fee dispute cases, there is no apparent social policy that would justify it. I would remand for the trial judge to make a factual finding on proximate cause on the basis of the evidence presented at the trial below.

---

[11] Plaintiff did not appeal the trial court's ruling that a legal malpractice case, whether framed as a negligence or contract claim, sounds in negligence absent specific contract terms. Thus, the issue was not before the Court for decision. Cf. *Lynch*, 115 Cal. Rptr. 2d at 400 (McDonald, J., dissenting) (challenging majority's treatment of contract claim against attorney as negligence claim subject to actual innocence requirement, and stating that majority's conclusion that a claim was a tort claim even though only a contract remedy was sought was "bizarre and without cited authority," and concluding that "[t]he proof of tort causation problem posited by the majority does not exist when the claim, as in this case, is limited to the reasonable value of services rendered.").