Technine, Inc. v. Simonds, No. S1210-09 CnC (Tomasi, J., Oct. 5, 2011)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT                                    CIVIL DIVISION
Chittenden Unit                                     No. S1210-09 CnC


TECHNINE, INC.,
          Plaintiff,

          v.

JOSHUA L. SIMONDS, ESQ.,
          Defendant.

### Ruling On Defendant's Motion For Summary Judgment

Plaintiff Technine, Inc. (Technine) sues its former attorney, Defendant Joshua L. Simonds, Esq., alleging legal malpractice.  Specifically, Technine asserts that, after Technine's former president and majority shareholder Ray Fortier asked Simonds about a balloon payment provision that Fortier thought was included in Fortier's employment agreement with Technine, Simonds altered the executed employment agreement to add a balloon payment provision.  Technine alleges that this conduct damaged Technine financially in three ways:  (1) it forced Technine to mount a costly defense to a lawsuit—*Fortier v. Technine*, No. S0558-06 CnC—in which Fortier attempted to reform the employment agreement to include the balloon payment and to obtain control over Technine's intellectual property; (2) Fortier made disparaging remarks about Technine during the *Fortier* litigation that damaged Technine's business reputation; and (3) the *Fortier* litigation caused a potential merger with Genfoot, Inc. to fail, resulting in

business losses. Technine alleges that Simonds was negligent (Count I), breached his legal services contract with Technine (Count II), and breached fiduciary duties he owed to Technine (Count III). Simonds has filed a motion for summary judgment on the grounds that there is no legally sufficient causal connection between his alleged misconduct and Technine's alleged damages.

## I. Background

Based on the parties' Statements of Uncontested and Contested Material Facts, the following material facts are undisputed, except where noted. Technine is a Vermont corporation. Although Technine denies (without citing anything in the record) that it is currently engaged in the business of producing and selling snowboard goods, it seems undisputed that, at the times relevant to this litigation, Technine produced and sold snowboarding "hard goods," such as snowboards and bindings, and "soft goods," such as jackets, sweatshirts, and other clothing and accessories. Technine's president in 2001 was Ray Fortier. Attorney Simonds represented Technine from 2002 to 2005.

In 2002 or 2003, Fortier first met Matthew Nielson, the founder of an Australian swimwear company called Sevcoy Proprietary, Ltd. (Sevcoy). Nielsen viewed the snowboarding business as a growth opportunity, and he and Fortier met to discuss potential investment by Sevcoy in Technine. At their meeting, Fortier and Nielson agreed that Sevcoy would provide design

2

assistance and clothing production as well as financial support in exchange for a 50% interest in Technine. Although Technine was then operating at a loss, Nielsen expected Technine to break even within a year or two and to generate profits in three years.

Sevcoy executed a written agreement for the purchase of Technine shares. Sevcoy invested $1.4 million in Technine for the 2002–2003 snowboarding season. For the following season, Sevcoy continued to invest in Technine but the business was losing money.

In late 2004 or early 2005, Nielsen and Fortier had a discussion about Sevcoy buying out Fortier's interest in Technine but keeping Fortier involved in the business. As a result of that discussion, Simonds drafted a "master agreement" between Technine and Sevcoy. In August 2005, two documents were signed: a stock purchase agreement between Fortier and Sevcoy and an employment agreement between Fortier and Technine. Although the matter may have been discussed, the executed employment agreement did not contain a "balloon payment" provision for Fortier in the event Technine was sold in the future.

Technine claims that, beginning in late 2005, Genfoot, Inc., began to express interest in buying or merging with Technine. A November 2005 meeting between Sevcoy and Genfoot led to a draft Letter of Understanding dated December 30, 2005. A final Letter of Understanding was never executed.

The potential for the sale of Technine was growing, however, and Fortier asked Simonds about a "balloon payment" provision in the employment contract. At that point, the written contract contained no such provision. Simonds proceeded to add a balloon payment provision to the already-executed agreement. He accomplished this by re-formatting a page of the agreement and inserting the new page, with the balloon payment language, into the signed contract.[1]

When Nielsen learned of the balloon payment provision, he indicated that he had not agreed to it and that it would not be honored by Technine.

On May 19, 2006, Fortier filed suit against Technine to reform the employment contract to include the balloon payment provision (the "*Fortier* suit"). On June 9, 2006, Technine fired Fortier. On June 28, 2006, Fortier filed a notice of dismissal of his complaint in the *Fortier* suit. Counsel for Technine objected to the dismissal. The suit was not dismissed.

In early October 2006, Fortier amended his complaint to add a number of other claims, including a claim concerning ownership of Technine's trademark. On October 31, 2006, this court, Judge Katz presiding, granted a preliminary injunction against Fortier to prohibit him from using the Technine trademark. After a hearing on the merits, on March 1, 2007, the court rendered a decision in the *Fortier* suit. Technine prevailed on all the

---

[1] Simonds asserts that he believed a mistake had been made in omitting the balloon payment language from the final version of the employment agreement.

claims Fortier asserted against Technine. As to the balloon payment, the court concluded as follows:

> The Fortier employment agreement ultimately executed by Nielsen did not contain a balloon payment provision. That would clearly have been an important item for Fortier. We are convinced that although he might not have parsed all the employment agreement's language, he would have checked for that provision. It was not there. It was not there for a reason— Nielsen never agreed to its inclusion. Nielsen never intended to grant Fortier such a termination benefit. Its absence from the written documents is no accident or error. To support his claim for reformation, Fortier offered the evidence of Joshua Simonds, corporate attorney for Technine. Simonds attended the meeting and had the task of scrivener. He testified that an earlier draft of Fortier's employment agreement had the termination protection, but in his late-in-the-evening edits, he somehow dropped it. What is undisputed is that some months later, upon being informed by Fortier of its absence, Simonds retyped the agreement so as to include the termination balloon payment paragraph 6(f), made sure the pagination roughly matched and brought these substitute pages to Fortier, who inserted them into the Nielsen-signed document. Simonds would appear to be something of a more neutral witness than either Nielsen or Fortier. At the very least, it is not his money which is at stake. Nevertheless, we decline to accept his testimony as the most reliable indicator of what bargain was struck between Nielsen and Fortier, given the clause's importance [to] Fortier and absence from the executed document.

> Paragraph 6(f) provides for three-times salary, plus expenses, payable immediately upon sale of the company. That's a lot of money. For any person, three times annual salary is a lot of money. It strains credulity that, at a time when the relationship between Fortier and Nielsen was becoming increasingly testy, when Nielsen was both consolidating control and complaining about poor corporate performance, Fortier would not look for 6(f), even if he looked for nothing else. He is nothing if not practical and mature; he is approaching retirement age. Three to four hundred thousand dollars constitutes an awful lot of money to him. Although the factual question may not be free from doubt, we are not persuaded that

5

Nielsen and Fortier actually agreed on the 6(f) balloon but inadvertently omitted it from the signed agreement.

*Fortier v. Technine*, No. S0558-06 CnC (Vt. Super. Ct. Mar. 1, 2007) (Katz, J.). Fortier did not appeal.

Technine claims that the deal with Genfoot fell through by June 2007. Citing Nielsen's deposition testimony, Simonds asserts that Nielsen did not know the reason Genfoot walked away from the deal. Citing the same testimony, Technine denies that assertion, and suggests that Nielsen did know the reason. There appears to be no dispute as to what Nielsen said at his deposition, and the Court reproduces here the sections the parties have cited:

> I don't know what went through [Genfoot President] Rick[] [Cook's] mind at the end of it all when it finally went down. . . . I never got a specific answer other than something to the tune of the time frame that had evolved. . . . I didn't get a black-and-white answer that we're no longer going forward. Genfoot just came out and said we're not going forward with this deal. We're now talking by the time we got this answer, it was in—like I say, a year-and-a-half later. I can only make assumptions that too much time had past [sic]. They moved on. Whether another opportunity came up or not, I don't know.

Nielsen Dep. 204:15–17, 207:1–3, 7–14, Sept. 19, 2010. In 2008, Technine was sold to another company, Brand Base.

## II. Discussion

The Court begins with a brief examination of the three counts in Technine's complaint. As mentioned above, Technine alleges that Simonds was negligent (Count I), breached his legal services contract with Technine

6

(Count II), and breached fiduciary duties he owed to Technine (Count III). It appears to the Court that each count is predicated on the same alleged conduct: Simonds' alteration of the already-executed employment contract to include the balloon payment provision. Simonds asserts in his motion that Technine's breach of contract claim (Count II) is subsumed by the malpractice claim (Count I). Mot. for Summ. J. at 4–5 (filed Apr. 11, 2011) (citing *Deptula v. Kane*, No. 2008-139 (Vt. Nov. 5, 2008) (unpublished mem.), available at http://www.vermontjudiciary.org/d-upeo/eo08-139.pdf). Technine does not directly address that assertion in its opposition, although it does maintain that Simonds breached "numerous duties" owed to Technine. Opp'n at 17 (filed May 20, 2011).

In *Deptula*, Edward Deptula brought suit against attorney Paula Kane, alleging various failures and asserting breach of contract, professional malpractice, and violation of Vt. R. Prof'l C. 1.7. The trial court granted summary judgment to Kane on all of Deptula's claims. As to Deptula's contract claim, the trial court reasoned that the contract claim and the malpractice claim were both based on an allegation of negligence, and considered the two claims as one. Deptula appealed, arguing, among other things, that the trial court failed to address his claim for breach of contract. The Supreme Court found no error, citing *Bloomer v. Gibson*, 2006 VT 104, ¶ 24, 180 Vt. 397, and concluding that the trial court properly found Deptula's contract claim to be a restatement of his negligence claim.

7

Here, Technine alleges in Count II that Simonds breached his contract to provide legal services to Technine by failing to act in Technine's best interest and by failing to perform his work in a careful, reasonable, and lawyerlike manner. Compl. ¶ 43. Technine has not alleged that Simonds breached any "special obligations" contained in his employment contract with Technine. *Bloomer*, 2006 VT 104, ¶ 24. The Court concludes that Count II is a restatement of the malpractice claim in Count I and that those two counts should be treated as a single negligence claim.

Simonds does not explicitly address whether Count III (breach of fiduciary duty) should be subsumed into Count I. Since Technine seeks the same monetary relief for the alleged breach of fiduciary duties as for malpractice, however, the causation analysis appears to be the same under Count III as under Count I. *See* Restatement (Third) of Agency § 8.01 cmt. d(1) ("An agent's breach also creates distinct bases on which the principal may recover monetary relief. An agent's breach subjects the agent to liability for loss that the breach causes the principal. . . . In these respects, the consequences of a breach of fiduciary duty do not differ from those of other torts that an agent may commit against a principal."); *see also Nordwind v. Rowland*, 584 F.3d 420, 433 (2d Cir. 2009) ("[W]here damages are sought for breach of fiduciary duty under New York law, the plaintiff must demonstrate that the defendant's conduct proximately caused injury in order to establish liability." (citation omitted)); 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal*

8

*Malpractice* § 8:5 (WL updated Jan. 2011) ("The same rules of causation apply whether the alleged wrong concerns a fiduciary breach or a breach of contract.").

As to causation, a "legal malpractice action is at base a negligence action: plaintiff must prove that the attorney was in fact negligent and that this negligence was the proximate cause of plaintiff's injury." *Roberts v. Chimileski*, 2003 VT 10, ¶ 15, 175 Vt. 480 (mem.). "[A]n element of proximate cause in lawyer malpractice actions is 'cause-in-fact.'" *Id.* In a legal malpractice action, if a plaintiff cannot prove that the lawyer's conduct, even if negligent, was the cause-in-fact of harm to the plaintiff, then the plaintiff cannot recover. *See Knott v. Pratt*, 158 Vt. 334, 335 (1992) (concluding, in legal malpractice action, that there was no need to reach the issue of negligence because "plaintiff failed to prove that defendant, even if negligent, proximately caused her harm").

Simonds' Motion for Summary Judgment basically raises two causation issues: (1) whether his allegedly negligent conduct caused the *Fortier* suit at all and (2) whether the *Fortier* suit, even if caused by that conduct, caused Technine to suffer any damages. The Court will address each of these issues in turn.

## A. **Whether Simonds' Allegedly Negligent Conduct Caused the *Fortier* Suit**

Simonds contends that the *Fortier* suit was the result of posturing by Fortier and that, even in the absence of Simonds' conduct, Fortier would have

filed his legal action. Mot. for Summ. J. at 10, 13 (filed Apr. 11, 2011). Technine asserts that "[i]t is clear that if Simonds had not taken these actions against the interest of his client, Technine would not have been forced to defend the *Fortier* litigation." Opp'n at 13 (filed May 20, 2011). Ultimately, Simonds argues that "[t]he struggle between Fortier and Nielsen was longstanding and certainly not the result of attorney Simonds' conduct relative to the 2005 transaction. The bottom line is that there is no evidence that attorney Simonds' conduct was a cause-in-fact of the *Fortier* suit." Reply at 5 (filed June 21, 2011).

For two reasons, the Court disagrees with Simonds. First, Technine has raised an issue of fact over whether Simonds' alleged malpractice was the but-for cause of the *Fortier* action. Undoubtedly, the insertion of the balloon payment provision in the contract may have added force to Fortier's legal position. The filing of the suit so soon after Nielson's rejection of the balloon payment provides an additional connection. A jury might well conclude the alleged malpractice and the filing of the action were inextricably intertwined.

Second, the alleged malpractice need not have been the sole cause of the lawsuit. The "but for" rule of causation is inapplicable where there potentially are "multiple sufficient" causes of an event. *Wilkins v. Lamoille Cnty. Mental Health Servs.*, 2005 VT 121, ¶ 13 n.3, 179 Vt. 107; *see also* 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 8:5 (WL updated Jan. 2011) ("This 'but for' rule is appropriate where there are no other causes.

10

The major failing of the rule is if there are multiple causes of the loss."). Instead, the relevant question is whether the alleged malpractice was a "substantial factor" in brining about the *Fortier* suit. *See Wilkins*, 2005 VT 121, ¶ 13. While the parties' "struggles" also may have led eventually to the litigation, that does not negate Technine's claim. In this case, at a minimum, a question of fact exists as to whether altering the employment contract was a substantial factor in brining about the *Fortier* lawsuit. Where, as here, reasonable minds might differ as to whether certain conduct caused an alleged harm, the issue is for the jury to resolve. W. Keeton, *et al.*, *Prosser and Keeton on Torts* § 41, at 267 (5th ed. 1984).

### B. <u>Whether the *Fortier* Suit Caused Technine any Damage</u>

Simonds asserts that, as a matter of law, Technine did not suffer any harm because Technine prevailed in the *Fortier* suit, and that Technine actually welcomed the suit as an opportunity for resolution of its dispute with Fortier. Mot. for Summ. J. at 9–13. Simonds also contends that Technine is speculating when it says that the *Fortier* suit caused the Genfoot merger to fail, and that, even if it did, there was never an agreement to sell Technine to Genfoot. Further, he claims there is insufficient evidence to prove what the financial return would have been had the merger gone through. *Id*. at 14–20. For its part, Technine maintains that, even though it did prevail in the *Fortier* litigation, it was still harmed because it incurred attorney's fees and costs in defending the suit. Opp'n at 12 (filed May 20, 2011). Technine also

11

maintains that it did not "welcome" the *Fortier* suit, and that its opposition to Fortier's notice of dismissal was not motivated out of a desire to litigate, but was, instead, a strategic decision. *Id*. at 13–14. Technine asserts that the agreement with Genfoot was real, that it suffered real damages as a result of the termination of the merger with Genfoot, and that it was, indeed, the *Fortier* litigation that caused the merger to fall through. *Id*. at 14–17.

The Court concludes that, if there is liability on any of Counts I through III, Technine has presented a sufficient factual showing that it may be entitled to some damages. Specifically, on the summary judgment record, the Court finds that Technine could potentially recover attorney's fees and costs in defending the *Fortier* suit, at least up to the time that Fortier filed his notice of dismissal.[2] *See Bloomer v. Gibson*, 2006 VT 104, ¶ 27, 180 Vt. 397 ("If plaintiff had incurred legal fees to correct the adverse consequences of defendant's malpractice, those fees might be recoverable because they were

---

[2] The parties dispute why Technine opposed Fortier's attempt to dismiss his case in June 2006. Simonds asserts that Technine affirmatively wanted to litigate, and that this further erodes any connection between Simonds' alleged misconduct and any damages stemming from the *Fortier* litigation. Technine maintains that Simonds has presented no factual support for his assertion that Technine wanted to litigate, and suggests that Fortier's attempt at dismissing his case in state court was a prelude to filing an action in federal court. Technine says that it resisted dismissal in order to avoid having to incur additional fees and expenses in defending an action in federal court. Neither party has supplied factual support in its statement of facts for its assertions regarding Technine's reasons for resisting Fortier's attempt to dismiss. As a result, the Court expresses no view as to whether Technine may be able to recover costs and attorneys' fees after Fortier sought to voluntarily dismiss the *Fortier* suit.

'caused by the wrongful act or omission.'" (quoting *Bourne v. Lajoie*, 149 Vt. 45, 53 n.3 (1987))); 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 8:5 (WL updated Jan. 2011) ("A negligently drafted provision or erroneous advice can involve the client in litigation. Those expenses may be the only damages sustained and can be recovered as direct damages." (footnote omitted)). For that reason, Simonds is not entitled to complete summary judgment.

On the other hand, the Court agrees with Simonds that Technine has failed to come forward with evidence connecting the alleged malpractice to the intellectual property claims eventually set forth in the *Fortier* suit or to the alleged failure of the merger with Genfoot. The Court notes that Fortier's claim that he owned the trademarks is, at best, only tangentially related to his claim regarding the employment agreement. There is no allegation that Simonds' alleged misconduct concerning the balloon payment had anything to do with the issue of intellectual property. On the present record, the Court sees no affirmative link between the employment litigation, which it has found was potentially connected to the alleged malpractice, and either the intellectual property dispute that eventually became the focus of the *Fortier* lawsuit or the failed merger.

Technine's arguments to the contrary are not convincing. Technine maintains that the connection between the *Fortier* litigation and the collapse of its relationship with Genfoot is "apparent." Opp'n at 16. In support,

13

Technine cites a letter from Genfoot's counsel (Attorney Fitzgerald) to Sevcoy's counsel (Attorney de Vere), dated September 21, 2006.[3]  In the letter, Attorney Fitzgerald wrote, among other things, that her firm had:

> invested considerable time, at Genfoot's expense, trying to ascertain what party has the right to sell the marks.  We have been unable to do so with certainty.  This uncertainty is exacerbated by Raymond Fortier's claim that he owns the Marks.  We give that little credence, but his claim has the potential to sabotage the deal.

Nielsen Aff. ¶ 5, Ex. 3.

It also submits the deposition testimony of Nielsen.  But, that testimony does not provide a sufficient foundation for a conclusion as to what ultimately caused the merger with Genfoot to fall through.  The only "specific" reason Genfoot's president gave Nielsen for the collapse of the merger was that the "time frame" had "evolved."

None of this evidence connects the altered employment agreement to the intellectual property claims or to the merger.  While the letter suggests a connection between the intellectual property claims and the merger, it does not indicate that the dispute over the balloon payment had any potential to sabotage the deal.  Similarly, the Nielsen testimony provides little, if any, connection between the failed merger and even the intellectual property

---

[3] Technine did not assert the contents of the letter in its response to Defendant's statement of undisputed facts.  In addition, Simonds objects to the letter as hearsay.  Even assuming that neither of these issues presents an obstacle, the Court concludes that the letter is insufficient to establish causation.

14

claims set out in the *Fortier* suit. In any event, to the extent Genfoot was at all concerned about the dispute over the balloon payment, that dispute was resolved in Technine's favor *before* Genfoot decided not to go forward with the merger.[4]

On the present record, the jury would have to speculate to conclude that the alleged malpractice was causally connected to the intellectual property claims or to the failed merger. While causation is typically a factual matter reserved for the jury, where the evidence is wholly speculative or otherwise insufficient to support a verdict, summary judgment may be appropriate. *See Blanchard v. Goodyear Tire & Rubber*, 2011 VT 85, ¶ 5 (mem.) (plaintiff brining toxic tort claim can not survive summary judgment unless he is able to point to evidence suggesting a probability, rather than a mere possibility, of general and specific causation); *Travelers Ins. Co. v. Demarle, Inc., USA*, 2005 VT 53, ¶ 10, 178 Vt. 570 (mem.) (trial court did not err by concluding that there was insufficient evidence to create a jury question on causation; at best there was only a "possibility" of causation); *Fuller v. City of Rutland*, 122 Vt. 284, 289 (1961) ("Evidence which merely

---

[4] In addition, Technine's opposition to Fortier's attempt to dismiss his case at its very inception further erodes any causal connection. As mentioned above, the parties seem to dispute why Technine opposed dismissal. Whatever Technine's reason, however, its opposition to the dismissal is, at a minimum, another weakness in the claimed causal chain.

makes it possible for the fact in issue to be as alleged, or which raises a mere conjecture, surmise or suspicion is an insufficient foundation for a verdict.").[5]

While the instant record leaves the Court unconvinced that a jury could rightly find a factual chain of causation between the altered employment agreement and the intellectual property claims or the failed merger, the Court does not enter summary judgment at this time. The Court understands that, in professional negligence cases, expert testimony is commonly necessary to show that the defendant's conduct was the cause of the plaintiff's harm. *Clayton v. Unsworth*, 2010 VT 84, ¶ 17. Here, Technine has not presented expert testimony on the question of causation in support of its claims, nor did it request additional time to retain experts or to obtain discovery under Vt. R. Civ. P. 56(f). While these are significant points, the Court is also guided by the fact that the issue of lack of expert testimony was not raised in Simonds' Motion for Summary Judgment. Further, based on a review of the docket entries in this matter, the parties have now retained experts and have agreed to an extension of the discovery schedule. In light of the Supreme Court's admonition that summary judgment typically not be entered until the parties have had an adequate time for discovery, *see Town of Victory v. State*, 174 Vt. 539, 543–44 (2002) (mem.), the Court believes it

---

[5] Technine's passing attempt to link the alleged malpractice to disparaging remarks about Technine that were purportedly made independently by Fortier is equally unpersuasive.

prudent to deny the remainder of Simonds' Motion for Summary Judgment at this time. The denial is without prejudice.

### **Order**

Defendant's motion for summary judgment is denied.

Dated at Burlington this ___ day of October, 2011.

_____
Timothy B. Tomasi
Superior Court Judge