NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 1

No. 23-AP-097

In re Rein Kolts

Supreme Court

On Appeal from
Superior Court, Addison Unit,
Civil Division

September Term, 2023

Michael S. Kupersmith (Ret.), J.

Matthew F. Valerio, Defender General, and Annie Manhardt, Prisoners' Rights Office,
  Montpelier, for Petitioner-Appellant.

Evan Meenan, Deputy State's Attorney, Montpelier, for Respondent-Appellee.

PRESENT:  Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.     **REIBER, C.J.**     Petitioner Rein Kolts appeals the denial of his petition for postconviction relief (PCR) based on a claim of ineffective assistance of counsel in plea negotiations. The PCR court determined that although petitioner's trial attorney's performance was deficient, petitioner did not suffer prejudice because there was not a reasonable probability that the original criminal trial court would have accepted petitioner's guilty plea. Petitioner argues that the PCR court erred by considering postconviction evidence in making this determination. We conclude that in determining whether the criminal court would have accepted a plea agreement, the PCR court can consider only evidence that was available to the criminal court at the time it would have considered the plea. We therefore reverse and remand to the civil division for reconsideration of this aspect of petitioner's ineffective assistance of counsel claim.

## I. Facts

¶ 2.     The record indicates the following.  In May 2014, the State charged petitioner with aggravated sexual assault of a child in violation of 13 V.S.A. § 3253a(a)(8), based on multiple sexual assaults of petitioner's then thirteen-year-old niece.[1]  That charge carried a mandatory minimum sentence of twenty-five-years-to-life.  Id. § 3253a(b).  Prior to his arraignment, petitioner twice confessed to committing the crime: first, to two plainclothes officers after thirty minutes of questioning, and second, to a family friend who worked at the court.

¶ 3.     Following his arraignment, petitioner initially retained attorneys Peter Langrock and Devin McLaughlin.  The State offered petitioner a plea deal, under which he would plead guilty to a lesser charge of aggravated sexual assault, 13 V.S.A. § 3253(a)(8), in exchange for a sentence of ten-years-to-life, split to serve five years.  Attorneys Langrock and McLaughlin discussed the plea offer with petitioner, but did not discuss the twenty-five-year mandatory minimum sentence for the charged offense if he were convicted.  Petitioner rejected the plea offer.

¶ 4.     Petitioner's relationship with attorneys Langrock and McLaughlin came to an end, and in November 2014, he hired attorney Mark Furlan to take over the case.  In the lead-up to trial, petitioner's defense suffered several setbacks, which the PCR court found left petitioner with "virtually no chance of being acquitted at trial."  First, attorney Furlan's motion to suppress petitioner's first confession was denied and he never moved to suppress the second confession.  Second, the criminal court denied petitioner's request to depose the minor victim.  Petitioner also clashed with attorney Furlan's chosen forensic expert, and the defense was ultimately unable to retain a forensic expert to help explain petitioner's voluntary confessions.  Finally, on the eve of trial, the court granted the State's motion to exclude testimony from petitioner's expert witnesses

---

[1]   The State separately brought a charge of aggravated sexual assault, 13 V.S.A. § 3253(a)(8), based on related events that occurred in a different county.  Prior to trial, the cases were consolidated.  Petitioner was found guilty of both charges, but the State dismissed the lesser charge.

concerning whether his confession was false. On attorney Furlan's advice, petitioner also decided that he would not testify at trial, leaving the defense with no witnesses to explain the two confessions.

¶ 5. On the morning of the jury draw, the State renewed its plea offer of ten-years-to-life, split to serve five years. The PCR court found that while attorney Furlan relayed the offer to petitioner, he otherwise made no effort to advise petitioner that the offer was in his best interest. Attorney Furlan stated at the PCR trial that he did not have any extended conversations with petitioner about pleading guilty, did not enter into any plea negotiations with the State, and because he was not asked to do so, did not make any recommendation that petitioner accept the plea offer. He explained that petitioner never asked him for any advice about the plea offer, and that his understanding was that petitioner was not willing to plead guilty. Petitioner's expert testified that that was below the standard of care. The PCR court also found that attorney Furlan did not engage in any additional efforts to persuade petitioner to accept the plea, such as enlisting the help of petitioner's family and friends or writing petitioner a letter explaining the situation. Petitioner's wife and son testified at the PCR trial that they would have supported petitioner in pleading guilty, and his treating psychologist testified that he would have been willing to help convince him by explaining the prudence of pleading guilty. Attorney Furlan also admitted that he never directly explained to petitioner the significant difference between the sentence provided for in the plea offer and the twenty-five-year mandatory minimum for aggravated sexual assault of a child. Petitioner testified that he did not understand the difference between the plea offer and the mandatory minimum until meeting with his PCR counsel in 2019. Petitioner rejected the plea offer at trial.

¶ 6. The jury found petitioner guilty after deliberating for less than two hours. While the criminal court expressed its view that home detention would be sufficient to protect the public, it ultimately sentenced petitioner to the mandatory minimum of twenty-five-years-to-life. This

Court affirmed petitioner's conviction over arguments that the confession should have been suppressed as involuntary and that he should have been allowed to introduce expert testimony to establish that he made a false confession. See State v. Kolts, 2018 VT 131, ¶ 1, 209 Vt. 351, 205 A.3d 504.

¶ 7.     In various postconviction statements, petitioner has repeatedly asserted his innocence. At a posttrial motion hearing, petitioner stated that he made "false confessions," and that a prosecution witness "perjured himself on the stand." In a presentencing letter, he claimed that "there was no confession" and that he was not guilty. At sentencing, petitioner claimed that the State "cannot even prove that a rape took place." After trial, petitioner stated in an affidavit that he had falsely confessed. And in more than a dozen postconviction court filings, petitioner repeatedly claimed that he was a victim of perjured testimony and that his confessions were false.

¶ 8.     Petitioner filed this PCR petition in January 2019, alleging multiple claims of ineffective assistance of counsel. All but one of these claims were made pro se and were dismissed by the PCR court in October 2021. Petitioner was represented by counsel on the remaining claim and alleged that attorney Furlan failed to provide effective assistance in the plea-bargaining process by neglecting to inform him about the mandatory minimum sentence and by not advising him to accept the plea offer. As a remedy, petitioner sought to require the prosecution to reoffer the initial plea deal. At the PCR trial, petitioner continued to insist on his innocence, stating that he was "emphatically" not guilty. On cross-examination, petitioner stated that he would be willing to falsely admit his guilt if necessary for his release.

¶ 9.     In its ruling, the PCR court recognized that, to prevail on his claims, petitioner must show that counsel's performance fell below an objective standard of performance, and that there was a reasonable probability that, but for these deficiencies, there would have been a different outcome. In re Grega, 2003 VT 77, ¶ 7, 175 Vt. 631, 833 A.2d 872. It concluded that attorney Furlan's performance was deficient due to his failure to: (1) review with petitioner the strength of

4

the State's case and the weakness of his own case; (2) emphasize the near-certainty of conviction or the mandatory minimum sentence for the charged crime; (3) weigh the mandatory minimum sentence against the plea offer; (4) strongly advise petitioner to take the plea offer; and (5) take additional action to convince petitioner to accept the plea offer.

¶ 10. On the question of prejudice, the PCR court concluded the standard was met in part because: there was a reasonable probability that petitioner would have accepted the plea offer but for attorney Furlan's ineffective assistance, the sentence in the plea offer was less severe than the sentence petitioner received at trial, and there was no evidence that the State would have withdrawn the offer prior to trial.

¶ 11. However, the court ultimately concluded that petitioner could not demonstrate prejudice because he could not show that the criminal court would have accepted his guilty plea to aggravated sexual assault. The court found that due to petitioner's repeated postconviction assertions of innocence, the criminal court could not have accepted a guilty plea because doing so would have required accepting a plea supported by false statements under oath. The court also found that even if postconviction relief were granted, the court would be unable to accept the reoffered plea deal because it was "obviously aware of [petitioner's] persistent claim of innocence and of his intention to lie under oath." Petitioner appealed to this Court.

## II. Standard of Review

¶ 12. The question of prejudice in a PCR appeal is a "mixed question of law and fact." In re Sharrow, 2017 VT 69, ¶ 11, 205 Vt. 309, 175 A.3d 1236. The PCR court's findings of fact are reviewed for clear error. State v. Bristol, 159 Vt. 334, 336, 618 A.2d 1290, 1291 (1992). This Court will not disturb factual findings "if they are supported by any credible evidence, and even when the evidence is conflicting, this Court will defer to the trial court's judgment." Id. at 336-37, 618 A.2d at 1291. However, questions of law are reviewed de novo, without deference to the

trial court's conclusions. In re FitzGerald, 2020 VT 14, ¶ 30, 212 Vt. 135, 229 A.3d 446; Sharrow, 2017 VT 69, ¶ 11.

### III. Arguments on Appeal

¶ 13. On appeal, petitioner makes two arguments. First, he contends that the PCR court erred by relying on his postconviction statements in determining that the criminal court would not have accepted his guilty plea. And second, petitioner argues that the PCR court acted prematurely in determining without a hearing that, even if postconviction relief were granted, he would not be entitled to resentencing or other relief.

### A. Use of Postconviction Evidence

¶ 14. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This implies a right to effective counsel that provides "the assistance necessary to justify reliance on the outcome of the proceeding." Strickland v. Washington, 466 U.S. 668, 692 (1984). Because the focus of the inquiry is on the outcome of the proceeding, a petitioner asserting ineffective assistance of counsel must show not only that counsel's performance was deficient, but also that "there is a reasonable probability that, but for counsel's unprofessional errors, the proceedings would have resulted in a different outcome." Grega, 2003 VT 77, ¶ 7; see Strickland, 466 U.S. at 687.

¶ 15. The U.S. Supreme Court has recognized that plea bargaining is one of the "critical stages" in the criminal process at which attorneys must render adequate assistance of counsel. Missouri v. Frye, 566 U.S. 134, 143 (2012). To show prejudice in this context, petitioner "must show the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, 566 U.S. 156, 163 (2012). To do so, petitioner must show that but for the ineffective advice of counsel, there is a reasonable probability that: (1) he would have accepted the offer; (2) the prosecution would not have withdrawn the offer in light of intervening circumstances; (3) the court would have accepted those terms; and (4) the offer's terms would have been less

6

severe than those that were actually imposed. Id. at 164; see Frye, 566 U.S. at 148 (applying same test).

¶ 16. The PCR court found that attorney Furlan's performance was deficient and that three of the elements of prejudice were met; however, the court denied the petition based on its conclusion that petitioner failed to show that the criminal court "would have accepted [the plea's] terms." Lafler, 566 U.S. at 164. It reasoned that the criminal court "could not have accepted the plea if [it] had been aware that [petitioner] was lying about the underlying facts." The narrow question that petitioner raises on appeal is whether the PCR court erred in relying on his postconviction assertions of innocence in reaching this conclusion.

¶ 17. As an initial matter, the State argues that petitioner's claims are unpreserved because petitioner did not specifically object to the PCR court's consideration of petitioner's postconviction actions. We reject the State's argument. It is true that this Court will not consider arguments on appeal that were not preserved in the trial court through presentation "with specificity and clarity." Rutland Herald v. Vt. State Police, 2012 VT 24, ¶ 33, 191 Vt. 357, 49 A.3d 91 (quotation omitted). But here, prior to the PCR trial, petitioner presented the argument that "had [he] been properly advised and accepted the State's offer, he would no longer have a reason to maintain his innocence, and there would have been no trial about which to write letters or file motions." Preservation requires that the trial court be given "a fair opportunity to rule" on the issue. State v. Ben-Mont Corp., 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994). By presenting the PCR court with an argument that the evidence was irrelevant because it would not have been available to the criminal court, petitioner made this argument with sufficient specificity and clarity to give the PCR court a fair opportunity to make its ruling. We conclude that the issue was adequately preserved.

¶ 18. Whether the PCR court could consider this evidence presents a legal question that we review de novo. See Sharrow, 2017 VT 69, ¶ 11. In Frye, the U.S. Supreme Court wrote that

7

"in most instances it should not be difficult to make an objective assessment as to whether or not a particular fact or intervening circumstance would suffice, in the normal course, to cause prosecutorial withdrawal or judicial nonapproval of a plea bargain." 566 U.S. at 149. Petitioner and the State dispute the meaning of "intervening circumstance."

¶ 19. Petitioner argues that the phrase is meant to capture the period between the State's offer and the time at which the court would have decided whether to accept the agreement. Petitioner cites the U.S. Supreme Court's disposition in Frye, where it remanded for the state court to consider whether, in light of the petitioner's new drunk driving offense that occurred between the time of the plea offer and the time of a preliminary hearing, "the trial court would have accepted" the plea at the preliminary hearing held on the initial charge that was the subject of the state's offer. Id. at 151.

¶ 20. Petitioner also cites several cases where courts have suggested that considering information that occurred during or after trial would be impermissible. In Medina v. United States, the Eleventh Circuit considered a district court's conclusion that the petitioner had not suffered prejudice because his insistence of innocence on appeal meant that he would not have received a reduction in sentence for acceptance of responsibility, and therefore, the plea terms would not have been less severe than those actually imposed. 797 Fed. App'x 431, 436-37 (11th Cir. 2019) (per curiam). While the Eleventh Circuit reversed the case on procedural grounds, the court noted that the district court's consideration of the petitioner's defenses at trial and on appeal was inappropriate because "if counsel's deficient performance had not occurred here, [the petitioner] would have pled guilty and his claims of innocence at trial and on direct appeal would not have occurred." Id. at 437. The other cases cited by petitioner similarly suggest that PCR courts should only consider information that the criminal court would have had before trial. See Ebron v. Comm'r of Corr., 53 A.3d 983, 992 n.9 (Conn. 2012) ("Presumably, the court in Lafler was not suggesting that a habeas court attempting to fashion a suitable remedy for a lapsed plea violation

8

should be permitted to consider information that never would have come to the trial court's attention if the petitioner and the trial court had accepted the plea offer, such as information that was developed at trial."); Rodriguez v. State, 470 S.W.3d 823, 829 (Tex. Crim. App. 2015) ("The only question is whether there is a reasonable probability that the original trial judge would have accepted the ten-year plea agreement when it was initially offered, prior to the trial.").

¶ 21.   On the other hand, in its brief, the State suggests that the "intervening circumstance" language allows courts to consider any subsequent events, not only events that occurred before the trial court was presented a plea agreement for approval.  The State cites several cases for the proposition that courts may consider intervening circumstances that occurred after the time when the court would have normally considered the plea.  See Hudson v. Butler, No. 13-C-00678, 2016 WL 3742848, at *15 (N.D. Ill. July 13, 2016) ("[A]ppropriate considerations in deciding whether to accept a reoffered plea may include: the circumstances surrounding the offense that emerged during trial; new details about the petitioner's criminal history revealed in a [presentence investigation report]; or other intervening circumstances that occurred after the plea offer."); People v. Parker, No. 317737, 2014 WL 7338894, at *7 (Mich. Ct. App. Dec. 23, 2014) ("[A]fter the prosecution reoffers the plea agreement, the trial court may then exercise its discretion, in light of all the circumstances of the case, in deciding whether to vacate the convictions from trial and accept the plea."); People v. McCauley, 821 N.W.2d 569, 569 (Mich. 2012) (directing trial court on remand to order prosecution to reoffer plea proposal, and stating that in deciding whether to accept or reject the reoffered plea, "the trial court may consider the defendant's willingness to accept responsibility for his actions, and it may also consider any information concerning the crime that was discovered after the plea offer was made.").  None of the cases cited by the State relate to the question of prejudice; instead, they relate to the appropriate standard for courts to apply in assessing whether to accept a reoffered plea deal.  Here, the plea

9

deal could only be reoffered after a finding of ineffective assistance of counsel—something that has not yet happened. The State's cases are therefore not relevant to the issue on appeal.

¶ 22. We agree with petitioner's position. Though neither party has identified any cases directly on point, case law from other jurisdictions suggests that PCR courts should not consider postconviction evidence in this aspect of the prejudice inquiry.[2] The Frye Court's language about intervening circumstances refers to events that occurred between the time of the plea offer and the time the court would have considered the agreement. Fundamentally, the question that the PCR court must answer in assessing prejudice on remand is whether there is a reasonable probability that the "outcome of the proceeding would have been different absent counsel's errors." Frye, 566 U.S. at 149 (emphasis added); see also Sharrow, 2017 VT 69, ¶ 11 ("[A] court making the prejudice inquiry must ask if the [petitioner] has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." (quoting Strickland, 466 U.S. at 695-96)). Because the inquiry is about what the outcome "would have been," the only relevant evidence is the evidence that was before the trial court at that time. If, as the PCR court found, petitioner would have pled guilty if he had effective assistance of counsel, then his subsequent claims of innocence would never have occurred. See Medina, 797 Fed. App'x at 437. In assessing whether the criminal court would have accepted the plea agreement if presented, the PCR court erred in considering the petitioner's postconviction actions. We therefore remand for the trial court to reassess the evidence absent those facts.

---

[2] This does not mean that it would be inappropriate to consider postconviction evidence for all elements of the prejudice inquiry. Such evidence might be relevant in determining whether a petitioner would have accepted a plea deal, since the petitioner's subsequent behavior provides insight into how they would have acted. See Rodriguez v. United States, No. 18-10598, 2022 WL 16695114, at *9 (D.N.J. Nov. 3, 2022) (finding no prejudice because petitioner's assertions of innocence made claim that he would have accepted plea agreement not credible); but see Cullen v. United States, 194 F.3d 401, 407 (2d Cir. 1999) (holding that insistence on innocence is relevant, but not dispositive of question of whether petitioner would have accepted plea offer). Here, the PCR court found that petitioner would have accepted the plea deal if given effective assistance. Because the State has not raised the issue, we will not disturb this finding.

10

¶ 23.   The State makes several other arguments for upholding the PCR court's decision, which we will address in turn.  First, the State argues that establishing prejudice here would be impossible because it would require petitioner to commit perjury.  As an initial matter, subsequent claims of innocence do not pose an automatic bar to a finding of ineffective assistance of counsel.  See, e.g., Boria v. Keane, 99 F.3d 492, 495-97 (2d Cir. 1996) (finding petitioner suffered prejudice from attorney's failure to discuss advisability of accepting plea offer despite petitioner's professions of innocence and attorney's belief that petitioner would never have admitted his guilt); Medina, 797 Fed. App'x at 437 (vacating petitioner's sentence based on finding of ineffective assistance of counsel despite petitioner's claims of innocence on direct appeal).  More importantly, as discussed, the prejudice inquiry is only retrospective in nature, with the PCR court seeking to evaluate whether there is a reasonable probability that the outcome would have been different if counsel had provided effective assistance.  Given that petitioner had not yet made any attestations of his innocence under oath at the time of trial, a guilty plea would only have been perjury if petitioner was in fact innocent.  Because the State is not arguing that petitioner was innocent, there is no issue of perjury with respect to the prejudice inquiry.

¶ 24.   Next, the State argues that excluding postconviction evidence from the prejudice inquiry will violate the policy favoring public disclosure of "all factors pertaining to any plea agreement."  Reporter's Notes, V.R.Cr.P. 11.  Here again, the State's argument is premature.  Since we are remanding for further consideration of petitioner's claims, this decision will not immediately result in any plea agreement being reached or approved.  Further, if petitioner successfully shows prejudice on remand, Lafler requires added steps.  The remedy is to first "require the prosecution to reoffer the plea proposal," and then for the criminal court to "exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed."  Lafler, 566 U.S. at 171.  Thus, the trial court finding prejudice will not

violate any policies underlying Rule 11 because further proceedings will develop the record prior to any final plea agreement.

¶ 25. Finally, the State argues that requiring courts to shield their eyes from subsequent events will result in an undesirable "windfall" for criminal defendants. See Lafler, 566 U.S. at 170. However, the U.S. Supreme Court's warnings in Lafler about a possible windfall to criminal defendants were in the context of remedies for ineffective-assistance claims, not the prejudice inquiry. See id. Further, despite its warning, the Court concluded that concerns of a windfall were unwarranted since thirty years of evidence showed "no indication that the system is overwhelmed by these types of suits or that defendants are receiving windfalls as a result of strategically timed Strickland claims." Id. at 172.

¶ 26. Thus, we conclude that the PCR court erred in considering evidence of petitioner's conduct after conviction. Here, since the plea agreement was reoffered on the morning of the jury draw and would have been considered just prior to trial, the PCR court may only consider evidence that was available at the time of trial. Petitioner requests that this Court not only reverse the denial of his petition, but also vacate his conviction and order the State to reoffer the original plea deal. We decline to do so, and instead remand to the civil division to consider whether, referencing only evidence available to the criminal court at the start of trial, there is a reasonable probability that the criminal court would have accepted the plea.

### B. Failure to Provide a Separate Hearing

¶ 27. Petitioner's second argument on appeal is that the PCR court erred by concluding without a hearing that it could not accept his guilty plea even if postconviction relief were available. After concluding that petitioner could not show prejudice, the PCR court further found that even if postconviction relief were to be granted, it could not approve the reoffered plea deal because it was "obviously aware of [petitioner's] persistent claim of innocence and of his intention to lie under oath in order to plead guilty."

¶ 28.    Because we remand for reconsideration of whether the criminal court would have accepted petitioner's plea, we do not reach petitioner's second claim of error.  However, in ordering a remand, we recognize that the PCR court's prior ruling could create the appearance of prejudgment of petitioner's claims.  Thus, to prevent "inadvertent prejudice or any appearance of unfairness to either side," we require that on remand, the case be heard in front of a different judge. In re Williams, 2014 VT 67, ¶ 49, 197 Vt. 39, 101 A.3d 151; see also Cullen v. United States, 194 F.3d 401, 408 (2d Cir. 1999) (remanding PCR case for hearing in front of new judge "to preserve the appearance of justice" given judge's previously expressed views on case) (quotation omitted). If that judge finds that petitioner has suffered prejudice, the case will then be transferred to the criminal division for consideration of the reoffered plea agreement.

IV.  Petitioner's Assertions of Innocence

¶ 29.    While the above discussion resolves the issues directly on appeal, we recognize the difficult questions this case poses should the PCR court find that petitioner suffered prejudice— specifically, questions related to petitioner's posttrial statements that he would commit perjury in accepting a guilty plea.  We write here to address additional arguments put forth by the State on this issue and to provide guidance to the trial court on remand.

¶ 30.    In Lafler, the U.S. Supreme Court recognized that in circumstances such as these, "[t]he time continuum makes it difficult to restore the defendant and the prosecution to the precise positions they occupied prior to the rejection of the plea offer."  566 U.S. at 172.  The Court suggested that at the remedy stage, courts may "take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions," and are not required to disregard "information concerning the crime that was discovered after the plea offer was made." Id. at 171-72.  Here, if petitioner can demonstrate on remand that he suffered prejudice, the remedy will be for the prosecution to reoffer the plea deal and for the criminal court to consider, within its discretion, whether to accept or reject the plea offer.  Id. at 171.  In exercising that discretion, the

13

criminal court may consider petitioner's postconviction assertions of innocence, as well as statements he made at the PCR trial.

¶ 31.    Recognizing this dynamic, the State suggests that this Court should conclude that the PCR court's decision was harmless error.  The State argues that "because courts cannot accept perjurious pleas," petitioner will not be able to complete a change of plea colloquy and the requested remedy will be unavailable.

¶ 32.    We conclude that the PCR court's errors were not harmless.  Ineffective assistance of counsel in plea negotiations is a "constitutional injury," and courts must take steps to "neutralize the taint" on resulting convictions.  Id. at 170-71 (quotation omitted).  By denying the ineffective-assistance-of-counsel claim based on impermissible considerations, the PCR court deprived petitioner of the opportunity for a hearing on the reoffered plea agreement and the opportunity to convince a court that he has accepted his guilt.  The State argues that petitioner will be unable to make a voluntary and factual guilty plea because of his posttrial statements of innocence, including at the PCR civil trial.  But this is a question best decided by a trial court on a factual basis on remand, rather than by this Court as a matter of law.  While the PCR court stated its intention to reject any reoffered plea deal, that is not determinative since, as ordered, the case on remand will be heard in front of a different judge, as would any subsequent plea deal.

¶ 33.    For the trial court, we note that the potential remedy—ordering the prosecution to reoffer the original plea deal—does not raise any separation of powers concerns.  The U.S. Supreme Court in Lafler explicitly authorized courts "to require the prosecution to reoffer the plea proposal," id. at 171, and most subsequent courts have ordered this remedy without discussion of any separation of powers issue.  See, e.g., United States v. Knight, 981 F.3d 1095, 1107 (D.C. Cir. 2020) ("[T]he appropriate remedy calls upon the government to reoffer the original plea deal . . . ."); United States v. Kearn, 54 F.4th 1225, 1226 (10th Cir. 2022) ("[D]istrict courts may require the government to reoffer a rejected plea if the defendant rejected it because of ineffective

14

assistance of counsel."). Courts that have considered the separation of powers issue have found that Lafler implicitly rejected any such concerns. See Stotts v. State, No. 117,289, 2018 WL 6071891, at *8 (Kan. Ct. App., Nov. 21, 2018) (noting that "the Supreme Court in Lafler tacitly rejected the argument that requiring the government to reoffer a plea agreement after the defendant had received a fair trial violates the separation of powers doctrine"); United States v. Wolfe, No. 2:11-CR-33, 2012 WL 1957427, at *14 n.27 (E.D. Tenn. May 31, 2012) (concluding that "the Supreme Court in Lafler and Frye have essentially rejected" arguments about separation of powers).

¶ 34.    Finally, we briefly address the points raised by our dissenting colleagues. The dissent first argues that we should affirm dismissal of the PCR petition by reversing the finding that attorney Furlan's performance was deficient. But it is well established that the failure to provide sufficient advice about the advantages and disadvantages of a plea offer is deficient performance. See Bristol, 159 Vt. at 338, 618 A.2d at 1292 (noting that attorneys have "a duty to communicate to a client not only the terms of a plea bargain offer, but also its relative merits compared to the client's chances of success at trial"); see also Boria, 99 F.3d at 498 (holding that petitioner had "constitutional right to be advised whether or not the offered bargain appeared to be desirable" (quotation and alteration omitted)); United States v. Carter, 130 F.3d 1432, 1442 (10th Cir. 1997) ("[E]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered."). It is uncontested that the trial court found that "[a]ttorney Furlan did not have any meaningful conversations with [petitioner] about pleading guilty" and "never advised [him] that it was in his best interest to accept the State's offer." It therefore properly concluded that his performance was deficient.

¶ 35.    Second, the dissent argues that we should alternatively affirm the PCR petitioner by reversing the finding that defendant would have accepted the plea bargain if provided effective assistance of counsel. We note that this is a factual question, reviewed for clear error, which we

15

will not disturb if it is "supported by any credible evidence." Bristol, 159 Vt. at 336, 615 A.2d at 1291. There was ample evidence in the record—including testimony and affidavits from petitioner, and testimony from his family, his psychologist, and an expert witness—that supports the court's finding that petitioner would have accepted the plea offer if adequately represented. We therefore conclude that the trial court did not clearly err in finding that there is a "reasonable probability" that petitioner would have accepted the plea bargain if provided effective assistance of counsel. See Strickland, 466 U.S. at 694.

¶ 36. We hold that the PCR court erred in considering postconviction evidence in determining whether the criminal trial court would have accepted petitioner's guilty plea. The prejudice inquiry is retrospective in nature, and in making the determination of what the criminal court would have done, the PCR court may only consider information that was available to the criminal court at the time the plea would have been considered. On remand, the PCR court is instructed to determine whether there is a reasonable probability that the criminal trial court would have accepted the plea offer, limiting its inquiry to evidence that would have been available to the criminal court at the time of trial. If it finds that such a probability exists, it may then order the prosecution to reoffer the plea deal, and assuming petitioner accepts the offer, the criminal court may then exercise discretion in determining whether to accept or reject the plea.

Reversed and remanded.

FOR THE COURT:

_____

Chief Justice

¶ 37. **EATON, J., dissenting.** While the majority is persuasive in its analysis of whether the PCR court could consider post-conviction evidence in assessing whether the trial court would have accepted petitioner's plea, I believe it is unnecessary to reach that novel question or to remand

16

the matter for further proceedings. In my view, the record does not support the PCR court's determination that petitioner's trial counsel failed to act in accordance with prevailing professional standards. But even accepting that defense counsel's performance was inadequate, the PCR court clearly erred in finding that there was a reasonable probability that, but for counsel's alleged deficiencies, petitioner would have accepted the plea bargain offered by the State. Because petitioner failed to satisfy this component of the prejudice analysis, I would affirm the denial of the petition for postconviction relief. I therefore respectfully dissent.

¶ 38. To prove ineffective assistance of counsel, petitioner had to first demonstrate by a preponderance of the evidence that "his counsel's performance fell below an objective standard of performance informed by prevailing professional norms." In re Grega, 2003 VT 77, ¶ 7, 175 Vt. 631, 833 A.2d 872. The PCR court concluded that attorney Furlan's performance was deficient because he failed to: review with petitioner the evidence that would be presented at trial and compare the strength of the State's case with the weakness of his own; emphasize the near-certainty of conviction and the fact that it would result in a mandatory minimum sentence of twenty-five years; weigh the near-certainty of a twenty-five-year minimum sentence against the State's offer of a split sentence with five years to serve; strongly advise petitioner that it was in his best interests to take the plea offer; or engage in strategies to "sell" the offer to petitioner and convince him to accept it.

¶ 39. In my view, none of these omissions amount to deficient performance in the context of this case. " 'Defense counsel has a duty to communicate to a client not only the terms of a plea bargain offer, but also its relative merits compared to the client's chances of success at trial.' " In re Plante, 171 Vt. 310, 313, 762 A.2d 873, 876 (2000) (quoting State v. Bristol, 159 Vt. 334, 338, 618 A.2d 1290, 1292 (1992)). It is undisputed that attorney Furlan communicated the offer made by the State just before trial to petitioner. He did not mischaracterize its nature or attempt to dissuade petitioner from taking it. Cf. Bristol, 159 Vt. at 338, 618 A.2d at 1292 (describing

situations where attorney advice regarding plea amounted to ineffective assistance). Petitioner was fully aware when the offer was renewed that the State had a very strong case against him. He knew that he had confessed to the crime twice, the confessions were going to be admitted into evidence, his expert witness was excluded from testifying, and the victim was available to testify. Petitioner stated at the PCR hearing that "confessions are the gold standard" and "the confession would have been all they needed." He agreed that attorney Furlan had explained to him that the trial court's refusal to exclude the confession had seriously weakened his case. Despite knowing all this, petitioner was adamant that he was innocent and that he would be acquitted by the jury. There is no indication that counsel's reiteration of these issues would have altered petitioner's decision to go to trial.

¶ 40. As for the penalty, the PCR court found that petitioner knew by the time of trial that he faced a mandatory minimum sentence of twenty-five years. The mandatory nature of the sentence was clearly laid out in the information, which stated that the sentence had to be served and could not be suspended, deferred, or served in the community. Defense counsel discussed the potential sentence with petitioner. The mandatory nature of the sentence was also raised at the pretrial motion hearing, which petitioner attended. Petitioner does not claim that he did not understand the term "mandatory." He knew that the ten-year split sentence offered by the State was less than the statutory minimum of twenty-five years. I do not believe that defense counsel erred by failing to explain these obvious points.

¶ 41. The PCR court also faulted defense counsel for failing to strongly advise petitioner to take the State's offer or to use other means to persuade petitioner. However, we have rejected the notion that a defense attorney who accurately informs the client about a plea offer but does not aggressively try to convince the client to take that offer thereby violates the standard of professional care. Bristol, 159 Vt. at 338, 618 A.2d at 1292. In Bristol, the trial court found that the petitioner's trial counsel was ineffective because he failed to forcefully pursue a plea bargain

18

offer of a zero-to-ten-year sentence for charges of murdering an elderly brother and sister. We reversed, distinguishing the attorney's failure to strenuously persuade the client from cases in which defense attorneys failed to inform their clients of plea offers, counseled them not to accept favorable plea bargains, or gave them false information. Id. We acknowledged the testimony of the petitioner's criminal-law experts that they would have been more forceful in persuading the client to take the offer, but reasoned that "a trial attorney is not required to demonstrate the highest level of expertise to effectively represent a client." Id.

¶ 42. Here, as in Bristol, petitioner does not allege that attorney Furlan failed to inform him of the plea offer, but rather that he failed to forcefully convince petitioner to accept it. Bristol makes clear that such conduct does not fall below the prevailing professional standard for a reasonably competent defense attorney. Attorney Furlan discharged his duty by accurately informing petitioner of the plea offer, which was obviously favorable under the circumstances. He was not required to coerce petitioner to accept it. See V.R.Pr.C. 1.2(a) ("In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered . . . ."). Indeed, such pressure would have risked making the plea involuntary, and could have led to a post-conviction relief claim on that basis. See In re Quinn, 174 Vt. 562, 564, 816 A.2d 425, 428 (2002) (explaining that "[t]he voluntariness standard may be violated by coercion in the form of impermissible pressure of counsel on his client to plead guilty" (quotation omitted)). Defense counsel should not be placed in a "damned if you persuade your client, damned if you don't persuade your client" position as the PCR court's decision would create.

¶ 43. I also strongly disagree with the defense expert's testimony that, to meet his professional obligations, defense counsel was required to take petitioner out to dinner or "go fishing" with him, or that he should have engaged petitioner's family and friends in something akin to an "alcoholic's intervention" to convince him to take the plea-bargain offer. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of

19

hindsight." Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (per curiam). Assuming for the purposes of argument that such a persuasion campaign would have been effective—which is not supported by the record—it goes far beyond what a diligent criminal defense attorney should reasonably be expected to do on behalf of their client, and could potentially be viewed as coercive. The standard of care requires the attorney to communicate a plea offer and to give accurate advice as to its merits. Plante, 171 Vt. at 313. It does not require the attorney to take the client on outings designed to pressure him to accept a plea offer.

¶ 44. But even if reasonable minds could disagree about whether defense counsel's performance was adequate in this case, petitioner's claim still fails, because he did not demonstrate that he was prejudiced by counsel's alleged errors. See Grega, 2003 VT 77, ¶ 7 (explaining that to prevail on ineffective-assistance-of-counsel claim, petitioner must demonstrate that outcome would have been different but for attorney's errors). "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." Missouri v. Frye, 566 U.S. 134, 147 (2012). The trial court clearly erred in finding that petitioner would have accepted the offer but for his attorney's deficient performance. The evidence here is overwhelming that petitioner was never going to accept any plea bargain offered by the State, regardless of his attorney's advice.

¶ 45. As the trial court found, petitioner was "highly resistant to accepting the State's plea offer." Petitioner's wife testified that he never talked to her about wanting a plea offer and that he was adamant that he did not sexually assault A.H. His therapist stated that petitioner "was quite certain that he would be exonerated," and never mentioned a plea offer. Attorney Langrock testified that petitioner did not want to discuss a plea agreement because he maintained his innocence. Langrock stated, "No matter how many times I confronted him with the problems of

20

that situation, I don't think he ever moved from that position." Langrock asked petitioner to undergo a polygraph to try to help petitioner understand his predicament. When the polygraph test did not go well, instead of reconsidering his position, petitioner fired Langrock. Langrock testified that of the various clients he had represented during his sixty-year career, which included at least fifty felony sexual assault cases, "I probably had the least success getting through to Mr. Kolts than anyone." Langrock's co-counsel McLaughlin testified similarly that petitioner was "contentious" and unwilling to accept the State's plea offer despite being aware of the strength of the State's case.

¶ 46. Petitioner then hired attorney Furlan, who testified that petitioner made it clear to him that he wanted to take the case to trial. Furlan attempted to discuss the State's plea offer with petitioner, but he "just wasn't interested in engaging with me about plea negotiations or pleading at all." Petitioner informed Furlan that "that's not why I hired you, and that's not the way we want to go." After Furlan's motion to suppress petitioner's confession was denied, he again attempted to discuss the plea offer with petitioner, but petitioner refused to discuss it even after the State renewed the offer on the first day of trial. Defendant attended his trial throughout, heard the evidence against him, and made no effort to accept the State's offer. Furlan explained that "[petitioner] just wasn't going to admit that he had done this or agree to go to jail."

¶ 47. Petitioner's behavior after he was convicted provides further evidence that he would not have accepted a plea offer. Even after he was found guilty by the jury and it became clear that he would be subject to the mandatory twenty-five-year minimum sentence, petitioner did not attempt to negotiate with the State. He told his new attorney James Gratton that he would not participate in a presentencing investigation or a psychosexual evaluation because he wasn't guilty. Attorney Gratton testified that he did not feel able to influence petitioner's thinking or decisionmaking. Petitioner's unwillingness to take a plea is further demonstrated by the fact that between trial and sentencing, he sued the victim and her parents, accusing them of perjury.

21

Petitioner continued to maintain his innocence at the sentencing hearing, telling the victim that her lies would haunt her. He filed numerous post-conviction motions and lawsuits asserting his innocence. At the PCR hearing, he continued to deny that he sexually assaulted A.H. He admitted that he would be lying under oath if he admitted to a factual basis and pled guilty.

¶ 48. While it may have been error for the PCR court to consider petitioner's postconviction behavior in assessing whether a plea would have been accepted by the trial court, this evidence is certainly relevant to whether petitioner would have accepted the plea offer, and convincingly indicates that he would not have done so even if his attorney had been more forceful. See, e.g., Osley v. United States, 751 F.3d 1214, 1225 (11th Cir. 2014) (concluding that petitioner's insistence on innocence during and after trial undermined his claim that he would have accepted plea deal); Humphress v. United States, 398 F.3d 855, 859 (6th Cir. 2005) (same); Sanders v. United States, 341 F.3d 720, 723 (8th Cir. 2003) (same); Cullen v. United States, 194 F.3d 401, 407 (2d Cir. 1999) (same); United States v. Stevens, 149 F.3d 747, 748 (8th Cir. 1998) (same). Although petitioner argues now that he would accept the plea offer even if it meant committing perjury during a plea colloquy, petitioner's behavior shows that he would not have done so when the plea was offered. The record shows that back then, petitioner was unyielding in his refusal to accept or even discuss a plea bargain and wanted to go to trial no matter what. The evidence cited by the majority does not demonstrate that petitioner would have accepted a plea back then. Rather, as I have discussed above, the testimony from petitioner's family and his psychologist indicates that he was convinced that he would be acquitted by the jury and was completely uninterested in considering a plea. Supra, ¶ 45. His expert witness's opinion that he could have been persuaded was not supported by petitioner's actual behavior at the time. The record evidence simply does not support petitioner's self-serving assertions that he could have been convinced to plead guilty. Petitioner therefore has not demonstrated prejudice, which is fatal to his ineffective-assistance claim.

¶ 49.    For these reasons, I would affirm the denial of postconviction relief.   See <u>Bloomer</u> <u>v. Gibson</u>, 2006 VT 104, ¶ 24 n.4, 180 Vt. 397, 912 A.2d 424 (explaining that "this Court may affirm a trial court's decision if the correct result is reached, despite the fact that the court based its decision on a different or improper rationale" (quotation omitted)).   I therefore respectfully dissent.

¶ 50.    I am authorized to state that Justice Carroll joins this dissent.


_____

Associate Justice

23