Vermont Superior Court
Filed 05/13/24
Addison Unit

VERMONT SUPERIOR COURT
Addison Unit
7 Mahady Court
Middlebury VT 05753
802-388-7741
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 2-1-19 Ancv

---

Kolts vs. State of Vermont

---

# FINDINGS AND ORDER

This is a post-conviction relief matter on remand from the Vermont Supreme Court. At a status conference, the parties stipulated to memoranda submission.

The petitioner contended that the court conclude there is a reasonable probability that the criminal court would have accepted the plea offer, limiting its inquiry to evidence that would have been available to the criminal court at the time of trial.

The State contended that ordering the State to re-extend its offer will thrust the matter into a paradox where the Criminal Division will consider a change of plea while aware of post-conviction innocence.

For the reasons below, the petitioner proved there is a reasonable probability that the criminal court would have accepted the plea offer. Judgment is entered in the petitioner's favor. The matter is returned to the criminal division and the prosecution shall reoffer the plea deal. The criminal court will consider, within its discretion, whether to accept or reject the plea offer. In exercising that discretion, the criminal court may consider the petitioner's postconviction assertions of innocence, as well as the statements he made at the PCR trial.

## Background and Guidance Upon Remand

This post-conviction relief case was initially heard by the civil division (hereinafter "PCR court"). Following the petition's denial the case was reviewed by the Vermont Supreme Court.

The PCR court initially found the underlying attorney's performance was deficient and that three of the elements of prejudice were met; the court denied the petition based on its conclusion that The petitioner failed to show that the criminal court "would have accepted [the plea's] terms.". *In re Kolts,* 2024 VT 1, ¶ 16, 312 A.3d 502, 509 (citation omitted). The PCR court concluded that the court, "could not have accepted the plea if the [it] had been aware that [petitioner] was lying about the underlying facts." *Id.* at ¶ 16, 509. The Vermont Supreme Court concluded the PCR court erred in considering the petitioner's post-conviction assertions of innocence in reaching the conclusion that the petitioner failed to show the criminal court would have accepted the plea's terms. *Id.* at ¶ 26, 513. As a result of that conclusion, this matter is returned to the civil division to consider "referencing only evidence available to the criminal court at the start of the trial, there is a reasonable probability that the criminal court would have accepted the plea." *Id.* at ¶ 26, 513.

The Vermont Supreme Court, noting the difficulties presented by this case, provided guidance to the apply in the remand. First, the petitioner must demonstrate upon remand that he suffered prejudice. Second, if the petitioner meets that burden, the remedy will be for the prosecution to reoffer the plea deal. Third, if accepted, it is for the criminal court to consider, within its discretion, whether to accept or reject the plea offer. *Id.* at ¶ 31, 514. In exercising that discretion, the criminal court may consider the petitioner's postconviction assertions of innocence, as well as the statements he made at the PCR trial. *Id.* at ¶ 31, 514.

"The PCR court is instructed to determine whether there is a reasonable probability that the criminal trial court would have accepted the plea offer, limiting its inquiry to evidence that would have been available to the criminal court at the time of trial." *Id.* at ¶ 36, 515.

## Facts

The following facts are found by a preponderance of evidence:

1. Rein Kolts is serving a mandatory minimum sentence of twenty-five years to life following his conviction of aggravated sexual assault of a child, repeated, in violation of 13 V.S.A. § 3253a(a)(8).

2. In the spring of 2014, Mr. Kolts' thirteen-year-old niece, A.H., accused him of raping her repeatedly over the course of two years, beginning when she was eleven years old.

3. The allegations came to light in April 2014, when A.H. told friends that she had been sexually assaulted by her father, a boy named "Kenny," and Mr. Kolts.

4. Following the initial disclosure to her friends, A.H. told the school nurse that only Mr. Kolts had sexually assaulted her.

5. In all her subsequent statements—to the Sexual Assault Nurse Examiner, in her interview at the Child Advocacy Center, in her interview at the Chester Police Department, and at trial—A.H. confirmed that Mr. Kolts was the only assailant.

6. On May 13, 2014, Mr. Kolts met voluntarily with law enforcement at the Addison County Unit for Special Investigations.

7. After approximately thirty minutes of questioning, Mr. Kolts confessed to engaging in sexual intercourse with A.H. on multiple occasions.

8. Immediately following his confession, Mr. Kolts was taken to the Addison County courthouse for his arraignment.

9. While in the holding cell at the courthouse, Mr. Kolts made additional incriminating statements to Michael Hanson, a family friend who worked as a court officer.

10. Mr. Kolts had known Mr. Hanson since Mr. Hanson was a young child.

11. Mr. Kolts told Mr. Hanson, "I fucked up, I wasn't the first, she was way too young, what they said was true, I did it."

12. Mr. Kolts told Mr. Hanson that he wanted to plead guilty at his arraignment.

13. Mr. Kolts told Mr. Hanson, "Mike, you know I'm a stand-up guy, you know that I take accountability for my actions."

14. Mr. Hanson dissuaded Mr. Kolts from pleading guilty at arraignment.

15. Mr. Kolts was represented at his arraignment by the public defender for Addison County at that time, Jerry Schwarz.

16. Mr. Kolts pled not guilty at his arraignment, where $50,000 bail and conditions of release were set.

17. Mr. Kolts posted bail six days later and was released from prison pending trial.

18. Shortly after his arraignment, on June 2, 2014, Mr. Kolts retained Langrock Sperry & Wool for his defense.

19. Mr. Kolts was represented by Peter Langrock and Devin McLaughlin.

20. In the early days of the case, State's Attorney Dennis Wygmans made the following offer to Attorney Langrock and Attorney McLaughlin: If Mr. Kolts plead guilty, the State would agree to a recommended sentence of ten years to life, split to serve five years.

21. Mr. Kolts hired Mark Furlan to take over the case in November 2014.

22. In September 2015, Attorney Furlan deposed A.H.'s mother, her father, her sister, and the two friends to whom she had initially disclosed the abuse.

23. On December 1, 2015, Attorney Furlan informed the State of his intention to call two expert witnesses—Paula Nath and Charles Rossi—to opine on the circumstances of Mr. Kolts' confession.

24. On January 25, 2016, Attorney Furlan filed a motion to depose A.H.

25. On February 18, 2016, Attorney Furlan filed a motion to suppress Mr. Kolts' statements during his interview at the Addison County Unit on Special Investigations.

26. The suppression motion did not address Mr. Kolts' statements to Mr. Hanson.

27. The State deposed Ms. Nath, Mr. Rossi, and Mr. Kolts' primary care physician, Dr. Allan Curtiss, in April 2016.

28. Ms. Nath admitted in her deposition that she did not have any experience evaluating people in the context of false confessions.

29. Mr. Rossi admitted in his deposition that he had no expertise pertaining to false confessions, that he was not a forensic psychologist, and that Mr. Kolts was the first person he had ever encountered who had falsely confessed to a crime.

30. Following a hearing and additional briefing, the court denied Mr. Kolts' motion to suppress his confession in an opinion issued June 30, 2016.

31. The defense's motion to depose A.H. was denied on October 28, 2016.

32. The State filed a motion in limine to exclude Ms. Nath and Mr. Rossi on November 30, 2016.

33. Attorney Furlan deposed Bonnie Schumann, the Sexual Assault Nurse Examiner who had examined A.H., and Michael Richard, the New Hampshire officer who initially responded to A.H.'s complaint, on December 2, 2016.

34. A hearing on the State's motion in limine regarding Ms. Nath and Mr. Rossi was held on January 13, 2017.

35. Ms. Nath testified at the hearing that she was not a forensic psychologist and had no training in forensic psychology.

36. The court granted the State's motion, finding that Ms. Nath and Mr. Rossi were not qualified to offer opinions about the circumstances of Mr. Kolts' confession.

37. Attorney Furlan filed a motion to reconsider the court's decision to exclude Ms. Nath and Mr. Rossi.

38. The court denied Attorney Furlan's motion to reconsider on the record prior to the jury draw.

39. The jury draw was held on January 17, 2017.

40. That morning, the prosecution renewed its offer of ten years to life, split to serve five years.

41. Mr. Kolts rejected the offer.

42. The trial took place January 18 through January 20, 2017.

43. The Honorable Judge Samuel Hoar presided over the trial.

44. The State's evidence at trial included testimony from the following witnesses: Michael Richard (an officer with the Brookline Police Department), Detective Ruth Whitney (one of the officers to whom Mr. Kolts confessed), A.H. (the complaining witness), Deena Biesecker-Hall (the complaining witness' mother), Bonnie Schumann (the Sexual Assault Nurse Examiner who treated A.H.), and Michael Hanson (the family friend to whom Mr. Kolts confessed at the courthouse).

45. The State also played the full video of Mr. Kolts' interview and confession for the jury.

46. The defense's case consisted of testimony from Mr. Kolts' physician regarding his history of self-reported erectile dysfunction, testimony from his sister-in-law about the layout of the property where one of the assaults allegedly took place, and testimony from Mr. Kolts' neighbor who sometimes had game cameras recording the area where some of the assaults allegedly occurred.

47. The defense also presented testimony from Mr. Kolts' wife, Karin Hall-Kolts, about her husband's difficulty processing information.

48. Mr. Kolts did not take the stand.

49. The jury deliberated for less than two hours, from 12:22pm to 2:01pm, before returning a guilty verdict on count one, aggravated sexual assault of a child, repeated events, 13 V.S.A. § 3252a(a)(8); and count two, aggravated sexual assault, minor under the age of 13, 13 V.S.A. § 3252(a)(8).

50. After the jury delivered its verdict, the State made an oral motion to dismiss count two, 13 V.S.A. § 3253(a)(8), the allegation that originated in the Windsor Unit, Criminal division. The State requested that a conviction be entered only on count one, 13 V.S.A. § 3253a(a)(8).

51. After the jury returned its guilty verdicts, the trial court raised the possibility of permitting Mr. Kolts to remain in the community on home detention. Concluding that it did not have the statutory authority to order home detention until Mr. Kolts had been held without bail for at least seven days, Judge Hoar stated, It is not my desire to have Mr. Kolts spend a single day in jail. Frankly, I wish I could find otherwise here today -- even the seven days that this now requires that he spend is not the Court's preference, so if it looks like DOC is not likely to approve home confinement, then I would also invite a motion to review.

52. Attorney Furlan filed a motion for home detention on behalf of Mr. Kolts, which was ultimately denied. At a hearing on the motion for home detention, Attorney Furlan stated: [F]rankly, I knew -- I'm not sure Mr. Kolts understood as well as I did -- that the -- once it became evident that the -- his confession was going to be entered into evidence, that the likelihood of prevailing at trial had dimmed considerably.

53. Mr. Kolts filed a motion to discharge Attorney Furlan on February 16, 2017.

54. The motion was granted, and Attorney James Gratton, Esq., was assigned to represent Mr. Kolts at his sentencing.

55. Mr. Kolts was sentenced to the mandatory minimum term of 25 years to life on July 24, 2017.

56. Mr. Kolts will reach his minimum sentence on December 10, 2041.

## Analysis

The standard for evaluating post-conviction claims of ineffective assistance of counsel is well established. "The first prong of this test is an inquiry into the 'reasonable competence [of the lawyer]

as measured by the prevailing standards in the conduct of the defendant's case.'" *In re Russo*, 2010 VT 16, ¶ 16, 187 Vt. 367 (quoting *In re Pernicka*, 147 Vt. 180, 182 (1986)). "The second prong of the test evaluates whether, if counsel's performance did fall below the objective standard, such failure created a 'reasonable probability' that effective counsel would have produced a different outcome." *Id*. This standard, requiring a petitioner to satisfy both prongs of the test, is essentially equivalent under the United States and Vermont constitutions. *Id.*

The current remand is limited to a determination of the last requirement, did such failure create a 'reasonable probability' that effective counsel would have produced a different outcome. *Id*. Specifically phrased by the Vermont Supreme Court, "The PCR court is instructed to determine whether there is a reasonable probability that the criminal trial court would have accepted the plea offer, limiting its inquiry to evidence that would have been available to the criminal court at the time of trial." *In re Kolts,* 2024 VT 1, ¶ 36, 312 A.3d 502, 515.

The petitioner contended, on the facts above there is a reasonable probability that the criminal trial court would have accepted the plea offer, limiting its inquiry to evidence that would have been available to the criminal court at the time of trial.

The State contended ordering the State to re-extend its offer will thrust the matter into a paradox where the Criminal Division will consider a change of plea while aware of post-conviction innocence, which this tribunal may not consider. It further asserts it would be gravely unreasonable for the criminal division to accept a plea taking post-conviction claims of innocence into account. Put simply, the State contends the PCR court should deny the Petition because the Criminal Division is not reasonably likely to accept the plea because it would be impossible for the court to accept it as truthful and voluntary.

Any paradox is not for the arbiter of post-conviction relief to consider. The sole determination is whether there is a reasonable probability that the criminal trial court would have accepted the plea offer, limiting its inquiry to evidence that would have been available to the criminal court at the time of trial. *In re Kolts,* 2024 VT 1, ¶ 36, 312 A.3d 502, 515. That determination is answered in the affirmative. There is a reasonable probability the criminal trial court would have accepted the plea for the following reasons:

> The petitioner would have pled to a significant overall term of ten years to life. The petitioner would have been incarcerated for five years of that term before release on probation. A lifetime of incarceration was a potential penalty for a probation violation. Inherent litigation risks existed, as they always do, with witness testimony. Additional litigation risks on appeal existed because the petitioner's two expert witnesses were excluded and the petitioner's motion to exclude the child's deposition was denied.

The determination that there is a reasonable probability the criminal trial court would have accepted the plea requires the court to conclude the petitioner met the burden to establish the attorney's failure created a 'reasonable probability' that effective counsel would have produced a different outcome.

## Order

Judgment is entered in the petitioner's favor. The matter is returned to the criminal division and the prosecution shall reoffer the plea deal. The criminal court will consider, within its discretion, whether

Order
2-1-19 Ancv Kolts vs. State of Vermont

Page **6** of 7

to accept or reject the plea offer. In exercising that discretion, the criminal court may consider the petitioner's postconviction assertions of innocence, as well as the statements he made at the PCR trial.

Electronically Signed 5/10/2024 4:42 PM pursuant to V.R.E.F. 9(d)

_____
John W. Valente
Superior Court Judge